MR. JUSTICE GULBRANDSON
delivered the opinion of the Court.
Plaintiffs, 79 Ranch and Harry Vandervoort, began this action in 1977 seeking to enjoin defendant Pitsch from us *429 ing water in Big Coulee Creek, and seeking a determination of each party’s water rights in the creek. After a hearing, the District Court entered scant findings and established the following water rights and priorities:
“(a) Vandervoort — 50 inches for use on Wl/2 Section 23-6N-21E., with priority date as of June 1, 1924.
“(b) 79 Ranch — 45 inches for use on SWV4 Section 25-5N-19E., with priority date as of June 13, 1973.
“(c) Pitsch — 68 inches for use on Section 35-5N-19E., with priority date as of July 1, 1976.”
Pitsch and 79 Ranch appealed from this judgment, but the case was remanded for further findings by the District Court. See, 79 Ranch, Inc. v. Pitsch (1981), Mont., 631 P.2d 690, 38 St.Rep. 1048. On remand, the District Court amended its findings and conclusions, and then reentered the original judgment quoted above. Pitsch and 79 Ranch again appeal.
Pitsch, 79 Ranch, and Vandervoort own land along Big Coulee Creek in Golden Valley County, Montana. Pitsch lives immediately upstream of 79 Ranch. Vandervoort’s ranch is about eighteen miles downstream.
In 1975, Pitsch bought his land from Bert Schaff. Bert Schaff had decided to begin irrigating his land in 1973 and filed a notice of appropriation for 30 cubic feet per second (c.f.s.) of water. He ordered a sprinkler system, but didn’t receive all of the necessary parts and therefore never irrigated. When Pitsch bought the land and water rights, he installed a different sprinkler system and began irrigating in July 1976.
79 Ranch, operated by Eugene Schaff, also filed a notice of appropriation and ordered a sprinkler system in 1973. 79 Ranch installed the sprinkler system, similar to the one ordered by Bert Schaff, and began irrigating in July 1973.
Pitsch and 79 Ranch claim a portion of a water right established in 1893 by the Montana Cattle Company. Montana Cattle Company had filed a notice of appropriation and irrigated, by a series of ditches, land now owned by *430 Pitsch and 79 Ranch. Testimony at trial indicated that irrigation by Montana Cattle Company stopped in 1911 or 1913.
Pitsch also claims a separate water right stemming from two notices of appropriation filed by Claude Hill, a successor in interest to Vs of the Montana Cattle Company water right and predecessor to Pitsch. These notices did not comply with the statutory procedures. Testimony at trial indicated that a few acres of Pitsch’s land was irrigated in the 1920’s. No firm evidence was presented, however, showing exactly when the ditches were used, how much water they carried, and which lands were irrigated at which times.
Vandervoort traces his water right from four notices of appropriation: 1,000 miner’s inches filed in 1902, 100 miner’s inches filed in 1909, 320 miner’s inches filed on June 11, 1925, and 300 inches filed in 1926.
The dispute here arose in the dry summer of 1977. 79 Ranch and Vandervoort claim that when Pitsch began irrigating in June of 1977, there was insufficient water in the creek for their cattle and fields. Negotiations failed and this lawsuit followed.
While the main issue on appeal is whether the water rights claimed by Pitsch and 79 Ranch were abandoned, Pitsch has also raised the following other issues on appeal:
1. Whether the District Court erred by failing to find that Pitsch’s predecessor in interest, Claude Hill, had acquired a water right in the 1920’s.
2. Whether the District Court erred by finding that Bert Schaff failed to exercise reasonable diligence.
3. Did the District Court err in finding that Vandervoort’s right to use 50 inches of water has a priority date of June 1, 1924?
4. Did the District Court err in finding that 79 Ranch may appropriate 45 inches of water under the June 13, 1973, notice of appropriation filed by Eugene Schaff?
The District Court found that the water rights claimed by Pitsch and 79 Ranch had been abandoned because the *431 water had not been used for at least forty, and perhaps as many as sixty successive years. Pitsch and 79 Ranch argue that the mere showing of nonuse even for a long period of time, is not sufficient to support a finding of abandonment. We disagree.
Abandonment of a water right is a question of fact. Section 89-802, Revised Codes of Montana, 1947, (applicable here, repealed in 1973). Our scope of review is therefore limited to determining whether there is sufficient evidence to support the District Court’s findings. Bagnell v. Lemery (1983), 202 Mont. 238, 657 P.2d 608, 40 St.Rep. 58. Forty years of nonuse is strong evidence of an intent to abandon a water right, and, in effect, raises a rebuttable presumption of abandonment. Because Pitsch and 79 Ranch have failed to rebut this presumption, the District Court’s finding must be affirmed.
The appropriation of water is based on its beneficial use. When the appropriator or his successor in interest abandons or ceases to use the water for its beneficial use, the water right ceases. Section 89-802, R.C.M., 1947 (repealed 1973). This fundamental principle has long governed the determination of water rights in Montana. In Power v. Switzer (1898), 21 Mont. 523, 55 P. 32, this controlling policy of beneficial use was explained:
“... It has been a mistaken idea in the minds of many, not familiar with the controlling principles applicable to the use of water in arid sections, that he who has diverted, or ‘claimed’ and filed a claim of, water for any numer of given inches, has thereby acquired a valid right, good as against all subsequent persons. But, as the settlement of the country has advanced, the great value of the use of water has become more and more apparent. Legislation and judicial exposition have, accordingly, proceeded with increasing caution to restrict appropriations to spheres of usefulness and beneficial purposes. As a result, the law, crystallized in statutory form, is that an appropriation of a right to the use of running water flowing in the creeks must be for some *432 useful or beneficial purpose, and when the appropriator, or his successor in interest, abandons and ceases to use the water for such purpose, the right ceases. (Sections 1880, 1881, Civil Code.)” 21 Mont. at 529, 55 P.32.
Water rights have therefore been limited to the amount of water actually put to a beneficial use, despite the amount of water diverted or claimed under a notice of appropriation. See also, Conrow v. Huffine (1914), 48 Mont. 437, 138 P. 1094; Peck v. Simon (1935), 101 Mont. 12, 52 P.2d 164; Galiger v. McNulty (1927), 80 Mont. 339, 260 P. 401.
In determining the abandonment of a water right, this Court has often recognized the rule that mere nonuse of the water does not constitute abandonment. To prove abandonment, one has to prove the other party intended to abandon his water right. Atchison v. Peterson (1872), 1 Mont. 561; Tucker v. Jones (1888), 8 Mont. 225, 19 P. 571; Thomas v. Ball (1923), 66 Mont. 161, 213 P. 597; Musselshell Valley F. & L. Co. v. Cooley (1929), 86 Mont. 276, 283 P. 213; St. Onge v. Blakely (1926), 76 Mont. 1, 245 P. 532; Shammel v. Vogl (1964), 144 Mont. 354, 396 P.2d 103.
Nevertheless, several Montana cases have also recognized that nonuse, while not conclusive, is evidence of an intention to abandon. In Smith v. Hope Mining Co. (1896), 18 Mont. 432, 45 P. 632, this Court stated that nine years of nonuse “is certainly very potent evidence, if it stood alone, of an intention to abandon.” 18 Mont. at 438. In our most recent case considering this issue, Holmstrom Land Co. v. Meagher Cty. Newland Creek Water District (1980), Mont., 605 P.2d 1060, 37 St.Rep. 295, we stated that seventy-five years of nonuse is “clear evidence” of abandonment. 605 P.2d at 1069.
Here, the evidence clearly shows at least forty years of continuous nonuse of the water rights claimed by Pitsch and 79 Ranch. As in Smith and Holmstrom, such a long period of nonuse is strong evidence of an intent to abandon the water rights. In effect, such a long period of continuous nonuse raises the rebuttable presumption of an intention to *433 abandon, and shifts the burden of proof onto the nonuser to explain the reasons for nonuse. This conclusion is highly consistent with the fundamental policy that a water right does not mean possession of a quantity of water, but its beneficial use.
The Colorado Supreme Court recently expressed well how the burden of proof shifts onto the nonuser once a long period of nonuse has been shown:
“Under Colorado water law, abandonment of a water right requires a concurrence of nonuse and intent to abandon. However, intent is the very essence of abandonment . . . Intent may be shown either expressly or by implication, with nonuse for a long period of time being evidence of an intent to abandon .. . Nonuse alone will not establish abandonment where the owner introduces sufficient evidence to show that during the period of nonuse there never was any intention to permanently discontinue the use of water.” [Citations omitted.] Beaver Park Water, Inc. v. City of Victor (1982), Colo., 649 P.2d 300, 302.
To rebut the presumption of abandonment, there must be established some fact or condition excusing long periods of nonuse, not merely expressions of desire or hope. C F & I Steel Corporation v. Purgatoire River Water Conservation District (Colo.1973), 183 Colo. 135, 515 P.2d 456; Cundy v. Weber (S.D.1941), 68 S.D. 214, 300 N.W. 17; City of Anson v. Arnett (Tex.1952), 250 S.W.2d 450.
Here, Pitsch argues that his predecessors in interest did not have sufficient funds to irrigate. Such a broad claim, unsupported by more specific evidence, is not sufficient to rebut the presumption of abandonment. In response to this same argument the Colorado Court has stated:
“.. . Considering the large demands for all of the appropriatable water in this state . . ., it might be said that nearly every abandoned water right could have its non-use justified by the economics that might prevail sometime in the future for use of this water. . . . This gleam-in-the-eye *434 philosophy is not consistent with the protection and preservation of existing water rights.” [Citations omitted] C F & I Steel Corporation, 515 P.2d at 458.
79 Ranch’s predecessor in interest, Ralph Schaff, stated that he was a dry land farmer and didn’t know how to irrigate. Neither Bert Schaff, Pitsch’s predecessor in interest, nor Eugene Schaff, the owner of 79 Ranch, knew he had a claim to an 1893 water right when he filed a notice for appropriation in 1973. The Pitsch land may have been irrigated in the 1920’s, but no clear evidence was presented showing how much and when.
The District Court’s findings of abandonment are therefore affirmed. This determination applies to the 1893 water right claimed by 79 Ranch, as well as the 1893 and 1920’s water rights claimed by Pitsch.
It should be noted that in section 85-2-404, MCA, the legislature has provided that ten successive years of nonuse while water was available creates a prima facie presumption of abandonment. This presumption will be applied after all existing water rights have been adjudicated under part 2 of Title 85, MCA. In our holding, here, we are simply recognizing this general, modern trend, and providing an approach for the determination of abandonment of water rights consistent with the express intent of our legislature.
On May 30, 1973, Bert Schaff, Pitsch’s predecessor in interest, filed a notice of appropriation of 30 c.f.s. of water. Schaff had purchased a new sprinkler system, but failed to receive certain necessary parts. Under section 89-811, R.C.M. 1947 (repealed 1973), a person is required to proceed with reasonable diligence to divert the water.
Pitsch claims that Bert Schaff proceeded with reasonable diligence by ordering the sprinkler system and that failure of delivery reasonably explains any delay. Also, Schaff’s negotiations for sale of his land postponed development of an irrigation system.
“Reasonable diligence” is a question of fact to be determined on a case-by-case basis. Montana Department of *435 Natural Resources & Conservation v. Intake Water Company (1976), 171 Mont. 416, 558 P.2d 1110. Here, the District Court found a lack of reasonable diligence on the part of Bert Schaff. Such findings will not be disturbed by this Court unless there is a clear preponderance of the evidence against them. Smith v. Krutar (1969), 153 Mont. 325, 457 P.2d 459.
Here, there was a three-year and three-month delay between the filing of the notice and actual diversion. Pitsch argues the delay was excusable or reasonable, and therefore his claimed water right should relate back to Schaff’s filing of the notice of appropriation. The test is whether there was an on-going effort to prosecute the construction of an irrigation system. See Intake Water Co., supra. While the record shows that Schaff purchased a sprinkler system, it does not show an on-going effort to proceed to completion and diversion. The original sprinkler system purchased by Schaff was neither installed nor used to divert water. Pitsch purchased and installed a whole new system. The record therefore supports the District Court’s conclusion that Schaff failed to diligently prosecute the construction of the sprinkler system.
Pitsch claims there is no substantial evidence to support the District Court’s determination that all 50 inches awarded to Vandervoort has a priority date of 1924. Pitsch argues that the evidence shows only 30 inches with a priority date in the 1920’s, and the remaining 20 inches with a priority date of 1941.
In Vidal v. Kensler (1935), 100 Mont. 592, 51 P.2d 235, this Court stated that the fixing of an arbitrary date of appropriation is harmless error unless the objecting claimant can show that his water right antedates the date fixed for another. Here, Pitsch has not shown a water right prior to either 1924 or 1941 and therefore the error, if any, in setting the 1924 priority date is harmless. It should be noted that this rule in Vidal applies only when the priority date and not the amount of water is challenged.
*436 Pitsch points out that the only evidence on record shows that 79 Ranch has used 30 inches of water and not 45 inches as determined by the District Court. While 79 Ranch filed a notice of appropriation for more than 45 inches, a water right is determined by the extent of the use. Irion v. Hyde (1938), 107 Mont. 84, 81 P.2d 353. Since the only evidence on the record shows that 79 Ranch has used 30 inches of water and not 45 inches, the District Court’s judgment must be modified accordingly.
In summary, the District Court’s judgment is affirmed with respect to Vandervoort’s water rights. The judgment should be modified to reduce 79 Ranch’s water right from 45 inches to 30 inches.
We cannot affirm the amount of Pitsch’s water right and the priority date set for that right. The District Court, after finding a lack of reasonable diligence and therefore no relation back to 1973, apparently granted Pitsch a “use” right as of 1976. The Water Use Act of 1973 emphatically stated that it contained the exclusive procedures for acquisition of a water right after 1973. Section 89-880(1), R.C.M., 1947 (now section 85-2-301, MCA.) Nothing on the record suggests Pitsch complied with the procedures of the Water Use Act. We therefore acknowledge only that the water rights of Vandervoort and 79 Ranch precede any water right claimed by Pitsch.
Remanded for modification of the District Court’s judgment in accordance with the views expressed in this opinion.
MR. JUSTICES HARRISON, SHEA and SHEEHY, and THE HONORABLE J. CHAN ETTIEN, DISTRICT JUDGE*, concur.