No. 92-092

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN THE MATTER OF THE ADJUDICATION OF THE
EXISTING RIGHTS TO THE USE OF ALL THE WATER
BOTH SURFACE AND UNDERGROUND WITHIN THE CLARK
FORK RIVER DRAINAGE AREA ABOVE THE BLACKFOOT
RIVER, INCLUDING ALL TRIBUTARIES OF THE CLARK
FORK RIVER ABOVE THE BLACKFOOT RIVER IN DEER
LODGE, GRANITE, LEWIS & CLARK, MISSOULA, POWELL
AND SILVER BOW COUNTIES, MONTANA.

**FILED**

JUL 2 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   The Water Courts of the State of Montana,
              The Honorable Leif B. Erickson, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        M. K. Daniels, Attorney at Law, Deer Lodge, Montana

        For Respondent:

        David L. Pengelly, Knight, Maclay & Masar, Missoula,
        Montana

Submitted on Briefs:   May 21, 1992

Decided:   July 2, 1992

Filed:

_____
                Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

This appeal arises from an order of the Water Court. The Water Court found that co-appellant City of Deer Lodge, predecessor in interest to co-appellants Evered and Ramona McQueary, abandoned through nonuse two water right claims in Cottonwood Creek, a tributary of the Clark Fork River. The Water Court ordered that the two water right claims shall not appear in the Preliminary or Final Decrees of the Clark Fork River Basin above the Blackfoot River (Basin 76G). We affirm.

The issue on appeal is whether the Water Court erred in finding that Deer Lodge abandoned the two water rights in Cottonwood Creek.

Pursuant to the statewide adjudication of existing water rights, Deer Lodge filed two claims for municipal use of water out of Cottonwood Creek. The claims are identified as 76G-W-010397-00 and 76G-W-010398-00 and were obtained by Deer Lodge from a private water company in 1934. Upon the issuance of a Temporary Preliminary Decree for the Clark Fork River Basin above the Blackfoot River (Basin 76G) in 1985, respondents William J. Applegate and Sharon Applegate filed objections to both claims on the basis that the claims had been abandoned by Deer Lodge.

In 1989, before the Water Court ruled on the Applegates' objections, Deer Lodge sold its interest in the two water rights to Evered and Ramona McQueary and filed a water right transfer certificate relating to those rights with the Montana Department of Natural Resources and Conservation. The Department acknowledged

2

the transfers on March 21, 1990, subject to the ongoing adjudication of the water rights.

A Water Master conducted a hearing on the Applegates' objections to the claims on October 3, 1990. At the hearing, the Applegates presented evidence that Deer Lodge had not used either of the two water rights for any municipal purposes, the beneficial use for which the rights were claimed, since the late 1940s. The period of nonuse was shown to be in excess of twenty-three years as of July 1, 1973. Deer Lodge presented testimony through the Deer Lodge City Clerk that the two water rights had been carried as assets on the city books during the time period between the late 1940s and July 1, 1973. The Clerk also testified that the diversion and conveyance works formerly associated with the water rights were no longer carried as assets on the city books.

Deer Lodge also offered into evidence three engineering reports relating, in part, to feasibility studies of the city's use of the Cottonwood Creek water rights. Each report was prepared after July 1, 1973. The reports were admitted for the limited purpose of demonstrating Deer Lodge's lack of intent to abandon the water rights after July 1, 1973.

Following the hearing, Deer Lodge requested that the record be reopened to allow it to introduce additional evidence. It sought to introduce supplemental exhibits identified as C-18, C-19 and C-20. Each exhibit related to a city-owned right-of-way easement across the Applegates' property for a water pipeline. The Water Master denied Deer Lodge's request to supplement the record and,

3

thereafter, entered his report on November 30, 1990.

The Water Master found that the relevant time frame for determining whether Deer Lodge abandoned the two water rights was the period prior to July 1, 1973; thus, the post-1973 engineering reports were found to be unpersuasive as evidence of a pre-July 1, 1973 lack of intent to abandon the water rights. He further found that Deer Lodge had abandoned both claims through nonuse over a period of time in excess of twenty-three years. Deer Lodge objected to the Water Master's report and requested a hearing before the Water Court.

The Water Court heard oral argument on Deer Lodge's objections on April 12, 1991. Following the hearing, the Water Court issued its findings of fact, conclusions of law and decree. It denied Deer Lodge's request to supplement the record with exhibits C-18, C-19 and C-20 and adopted the Water Master's findings regarding Deer Lodge's abandonment of the two water rights. The Water Court ordered that water right claims 76G-W-010397-00 and 76G-W-010398-00 shall not appear on the Preliminary and Final Decrees of the Clark Fork River Basin above the Blackfoot River (Basin 76G). This appeal followed.

Did the Water Court err in finding that Deer Lodge abandoned the two water rights in Cottonwood Creek?

The abandonment of a water right is a question of fact. Section 89-802, RCM (applicable here, repealed in 1973); 79 Ranch, Inc. v. Pitsch (1983), 204 Mont. 426, 431, 666 P.2d 215, 217. The standard of review of judge-made findings of fact is whether the

4

findings are clearly erroneous. Dennis v. Tomahawk Services, Inc. (1989), 235 Mont. 378, 767 P.2d 346. This Court recently adopted a three-part test to determine if a finding is clearly erroneous.

> First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence we will determine if the trial court has misapprehended the effect of evidence. [Citations omitted.] Third, if substantial evidence exists and the effect of the evidence has not been misapprehended, the Court may still find that "[A] finding is 'clearly erroneous' when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed." [Citation omitted.]

Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287.

It is a fundamental principle in Montana that appropriation of water is based on its beneficial use; when the owner of the water right abandons or ceases to use the water for its beneficial use, the right ceases. 79 Ranch, 204 Mont. at 431, 666 P.2d at 217. This controlling policy of beneficial use was explained long ago in Power v. Switzer (1898), 21 Mont. 523, 529, 55 P. 32, 35, as quoted by this Court in 79 Ranch:

> It has been a mistaken idea in the minds of many, not familiar with the controlling principles applicable to the use of water in arid sections, that he who has diverted, or "claimed" and filed a claim of, water for any number of given inches, has thereby acquired a valid right, good as against all subsequent persons. But, as the settlement of the country has advanced, the great value of the use of water has become more and more apparent. Legislation and judicial exposition have, accordingly, proceeded with increasing caution to restrict appropriations to spheres of usefulness and beneficial purposes. As a result, the law, crystallized in statutory form, is that an appropriation of a right to the use of running water flowing in the creeks must be for some useful or beneficial purpose, and when the

5

appropriator, or his successor in interest, abandons and ceases to use the water for such purpose, the right ceases. [Citation omitted.]

Two elements are necessary for the abandonment of a water right: nonuse of the water associated with the water right and intent to abandon the water right. Shammel v. Vogl (1964), 144 Mont. 354, 396 P.2d 103; Thomas v. Ball (1923), 66 Mont. 161, 213 P. 597. We stated in 79 Ranch that evidence of a long period of continuous nonuse of a water right raises a rebuttable presumption of an intent to abandon that right and shifts the burden of proof to the nonuser to explain the reasons for nonuse. 79 Ranch, 204 Mont. at 432-33, 666 P.2d at 218. To rebut the presumption of abandonment, there must be established some fact or condition excusing the long period of nonuse, not mere expressions of hope or desire reflecting a "gleam-in-the-eye philosophy" regarding future use of the water. 79 Ranch, 204 Mont. at 433-34, 666 P.2d at 218-19 (citing authorities).

The case at bar presents a factual situation similar to that in 79 Ranch. The Applegates presented uncontradicted evidence that Deer Lodge had not used the two water rights since it ceased using Cottonwood Creek water for municipal purposes in the late 1940s. This showing of twenty-three plus years of continuous nonuse raised a rebuttable presumption that Deer Lodge had abandoned the water rights.

The burden of proof then shifted to Deer Lodge to rebut the presumption of abandonment. The only relevant evidence offered by Deer Lodge was that it continued to carry the water rights as

6

assets on its books during the period of nonuse. It presented no evidence that it had made any efforts to make use of the water rights between the late 1940s and July 1, 1973. It presented no evidence that it had maintained its diversion and conveyance facilities; in fact, it indicated that those facilities were no longer carried as assets on its books.

Deer Lodge's evidence that it carried the water rights as assets on its books is not sufficient to rebut the presumption of abandonment. It does not meet the requirement in 79 Ranch of explaining the reasons or excuse for long periods of nonuse. Indeed, Deer Lodge's evidence, by itself, reflects nothing more than a "gleam-in-the-eye philosophy" regarding future use of the water which, as stated in 79 Ranch, "is not consistent with the protection and preservation of existing water rights." 79 Ranch, 204 Mont. at 434, 666 P.2d at 219. To find otherwise would be inconsistent with the "[f]undamental policy that a water right does not mean possession of a quantity of water, but its beneficial use." 79 Ranch, 204 Mont. at 433, 666 P.2d at 218 (emphasis in original).

Deer Lodge suggests that it was caught by surprise and was "blindsided" by the Water Court's finding that the pre-July 1, 1973 time frame was controlling in determining the abandonment question and the court's corresponding finding that the post-1973 engineering reports were not persuasive in showing a lack of intent to abandon. It states that it assumed that its burden was to show a lack of intent to abandon the water rights by post-July 1, 1973

7

evidence and, thus, it "[m]ade no effort to obtain evidence that may have been available during the period from the late 1940's to July 1, 1973."

We find no error on the part of the Water Court in refusing to consider Deer Lodge's post-1973 engineering reports as persuasive evidence. The Montana Water Use Act was enacted during the 1973 legislative session and became effective on July 1, 1973. The Act defined an "existing right" as "[a] right to the use of water which would be protected under the law prior to July 1, 1973." Section 89-867(4), RCM (now § 85-2-102(9), MCA). In 1979, upon passage of the general statewide Water Adjudication Act, the legislature directed the adjudication of all "existing" water rights and specifically identified those rights as those in existence prior to July 1, 1973. Section 85-2-212, MCA. Thus, the clear purpose of statewide adjudication is to adjudicate water rights as they existed on July 1, 1973. Given this background, the Water Court correctly determined that only the pre-July 1, 1973 time frame was relevant on the abandonment question and evidence relating to intent to abandon which reflected Deer Lodge's post-1973 actions was not persuasive.

Deer Lodge also asserts that the Water Court should have considered its post-hearing evidence regarding its continued protection of an easement for a pipeline across the Applegates' property as evidence of a lack of intent to abandon the water rights. We conclude that the Water Court in this case correctly refused to consider this evidence. Montana law has long recognized

8

that water rights and easements or ditch rights are separate and distinct rights. McDonnell v. Huffine (1912), 44 Mont. 411, 422-23, 120 P. 792, 795; Missoula Light & Water Co. v. Hughes (1938), 106 Mont. 355, 365, 77 P.2d 1041, 1046; Mildenberger v. Galbraith (1991), 249 Mont. 161, 166, 815 P.2d 130, 134. Because water rights and easements are separate and distinct legal rights, one can be abandoned without abandoning the other. McDonnell, 44 Mont. at 423, 120 P. at 795. While in other cases such evidence may be admissible, evidence of Deer Lodge's continued protection of its easement was irrelevant to the issue of whether it abandoned its water rights.

We conclude that the Water Court's finding that Deer Lodge abandoned its claims to the two water rights in Cottonwood Creek is supported by substantial evidence. Further, in accordance with our three-part test in Interstate Prod. Credit Ass'n, we determine that the court did not misapprehend the effect of the evidence. Finally, after a review of the record, we are not left with a definite and firm conviction that a mistake has been committed. Accordingly, we hold that the Water Court's finding that Deer Lodge abandoned the water rights is not clearly erroneous and, thus, we will not disturb the court's ruling.

Affirmed.

_____
Justice

9

We concur:

_____
Chief Justice

_____

_____

_____
Justices

July 2, 1992

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


M. K. DANIELS
Attorney at Law
P.O. Box 670
Deer Lodge, MT 59722

David L. Pengelly
KNIGHT, MACLAY & MASAR
P.O. Box 8957
Missoula, MT 59807-8957

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
     Deputy