No. 95-377

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN THE MATTER OF THE ADJUDICATION OF THE EXISTING RIGHTS TO THE USE
OF ALL THE WATER, BOTH SURFACE AND UNDERGROUND WITHIN THE CLARK
FORK RIVER DRAINAGE AREA ABOVE THE BLACKFOOT RIVER, INCLUDING ALL
TRIBUTARIES OF THE CLARK FORK RIVER ABOVE THE BLACKFOOT RIVER
IN DEER LODGE, GRANITE, LEWIS AND CLARK, MISSOULA, POWELL, AND
SILVER BOW COUNTIES, MONTANA.

CLIFFORD E. GRAVELEY,

Claimant and Appellant,

and GRAVELEY BLACK MOUNTAIN RANCH, CLIFFORD E. GRAVELEY, JAMES
BIGNELL, DAN M. GRAVELEY, JIM C. QUIGLEY, WILLIAM McINTOSH,
OLIVE McDONALD, MONTANA DEPARTMENT OF FISH, WILDLIFE & PARKS,

Objectors and Respondents.

APPEAL FROM:    Montana Water Court, Clark Fork Division! Clark
                Fork River Above the Blackfoot River Basin (76G)
                The Honorable Ted Mizner, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Peter C. Pauly, Helena, Montana
            (Clifford E. Graveley)

        For Respondents:

            G. Steven Brown, Attorney at Law, Montana Dept.
            of Fish, Wildlife & Parks, Helena, Montana;
            John Bloomquist, Attorney at Law, Helena, Montana
            (Graveley Black Mountain Ranch);
            Cindy E. Younkin, Attorney at Law, Bozeman,
            Montana (Jim C. Quigley);
            David L. Pengelly, Attorney at Law, Missoula,
            Montana (James Bignell and Dan Graveley)

        For Amicus Curiae:

            Holly Jo Franz, Gough, Shanahan, Johnson
            & Waterman, Helena, Montana (Montana Mining Assn.)

FILED

DEC 21 1995

Filed: Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  December 7, 1995
              Decided:  December 21, 1995

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Clifford E. Graveley filed a statement of claim for one-half of an existing water right of 350 miners inches (8.75 cfs) from Three Mile Creek in Powell County. Olive McDonald, Jim C. Quigley, Clifford E. Graveley, William McIntosh, Dan M. Graveley, James E. Bignell, the Montana Department of Fish, Wildlife and Parks, and the Graveley Black Mountain Ranch (Respondents) objected to his claim. On March 17, 1994, following a hearing on respondents' objections, the Water Master entered a report in which he found that Clifford Graveley's water right had been abandoned by over fifty years of nonuse, and in which he concluded that Graveley's water right claim should be terminated, and that the water right should not appear in the preliminary decree for the Clark Fork River above the Blackfoot River Basin. Graveley objected to the Water Master's report. On April 4, 1995, the Water Court, Clark Fork Division, entered an opinion and order in which it adopted the Water Master's report and terminated Graveley's water right. Clifford Graveley appeals the Water Court's order. We affirm the order of the Water Court.

There is one issue on appeal:

Did the Water Court err when it found that Graveley's water right, appropriated and decreed for mining purposes, had been abandoned by a long period of nonuse?

FACTUAL BACKGROUND

Pursuant to the statewide adjudication of water rights, Clifford E. Graveley filed a claim for an existing water right to

2

**divert 175 miners inches of water** (4.375 cfs) from Three Mile Creek, a tributary of the Little Blackfoot River. The means of conveyance of Graveley's claim was the Ohio Ditch, which diverted water southeast from Three Mile Creek to the Ophir Mining District. The Ohio Ditch is the only ditch from Three Mile Creek capable of serving Graveley's patented mining claims.

Graveley's water right claim, identified as 76G-W-090819-00, was based on a right decreed to the Ophir Gold Mining Company in 1913 with a claimed priority date of June 1, 1865. The Ophir Gold Mining Company's right was specifically decreed "for the purpose of placer mining in Ophir Gulch and Carpenter Bar and beyond and without the watershed of said Three Mile Creek." That right was transferred four times between 1939 and 1959. On July 6, 1959, Graveley received the water right as part of a conveyance of several placer claims, water rights and ditch rights. Immediately thereafter, Graveley deeded a one-half interest in those mining claims and water rights to William L. McIntosh.

On May 17, 1985, a water right for claim 76G-W-090819-00 was granted to Graveley as part of a temporary preliminary decree for the Clark Fork River Basin above the Blackfoot River (Basin 76G). Respondents filed objections to Graveley's claim on the basis that the claim had been abandoned through nonuse. On December 14, 1993, a Water Master conducted a hearing to consider the respondents' objections to Graveley's claim.

Although there was some testimony at the hearing that limited mining activity took place after 1913 in the Ophir, Snowshoe, and

Carpenter Creek Mining District, in which Graveley's claim is located, there was no dispute that that mining did not involve use of Graveley's claimed water right. In fact, the parties agreed that Graveley's water right had not been used at all for at least fifty years prior to June 1, 1973. During this period of time, no maintenance was done to the Ohio Ditch or its headgate on Three Mile Creek. In fact, testimony revealed that at the time of the hearing the headgate was approximately 150 feet from the creek and was in a state of total disrepair.

Testimony at the hearing also revealed that Graveley had done nothing to use the water right himself. Graveley testified that his intention when he purchased the property associated with the water right claim was for ranching. Although Graveley did state that he was aware of the mining claims and the water rights associated with them, he admitted that he is not a miner and had no intention of mining the area himself. Graveley did not give a reason for the long period of nonuse of his claim except for an apparent lack of economic viability to warrant mining in the area.

Although the Water Master noted, based on the testimony of Graveley's expert witnesses, that the Ophir Mining District might have some potential for future mining activity, he concluded that the evidence of a use of a right after July 1, 1973, is not relevant to the determination of existing water rights. Therefore, based on the testimony at trial, the Water Master found that there was a rebuttable presumption that Graveley's water right had been abandoned by a fifty-year period of nonuse. The Water Master

4

further found that Graveley had failed to give a reason for nonuse that would overcome the presumption of abandonment. The Master therefore held that Graveley's water right claim should be terminated and that the claim should not appear in the preliminary decree for the Clark Fork River above the Blackfoot River Basin. Graveley objected to the Water Master's report and appealed the decision to the Water Court, Clark Fork Division.

On appeal, the Water Court held that substantial credible evidence supported the Water Master's findings of fact and that he correctly applied the law. The court therefore denied Graveley's objection to the Water Master's report and adopted the Water Master's findings regarding Graveley's abandonment of the mining water right. On the basis of these findings, the Water Court ordered that water right claim 76G-W-090819-00 is terminated and shall not appear in the preliminary decree of the Clark Fork River above the Blackfoot River Basin (Basin 76G).

## DISCUSSION

Did the Water Court err when it found that Graveley's water right, appropriated and decreed for mining purposes, had been abandoned by a long period of nonuse?

Whether a water right has been abandoned is a question of fact. Section 89-802, RCM (applicable here; repealed in 1973); *In re Adjudication of Water Rights of the Clark Fork River* (1992), 254 Mont. 11, 14, 633 P.2d 1120, 1122. We review a water court's findings of fact to

determine whether they are clearly *erroneous. In re Clark Fork River*, 833 P.2d at 1122.

There are two essential elements for the abandonment of a water right: nonuse of the water associated with the water right and intent to abandon the water right. *In re Clark Fork River*, 833 P.2d at 1123. In *79 Ranch, Inc. v. Pitsch* (1983), 204 Mont. 426, 666 P.2d 215, we set forth the criteria for determining whether a water right has been abandoned. The objectors have the initial burden of proving that a water right has not been used for a sufficiently long period of time to raise a rebuttable presumption of an intent to abandon that right. *79 Ranch*, 666 P.2d at 218. Once a period of nonuse sufficient to raise the presumption of an intent to abandon has been established, the burden shifts to the claimant of the water right to explain the reasons for nonuse. *79 Ranch*, 666 P.2d at 218. To rebut the presumption of abandonment, the claimant must establish "some fact or condition excusing the long period of nonuse, not mere expressions of hope or desire reflecting a 'gleam-in-the-eye philosophy' regarding future use of the water." *In re Clark Fork River*, 833 P.2d at 1123 (quoting *79 Ranch*, 666 P.2d at 219).

In this case, it is undisputed that Graveley's water right was not used for a period of at least fifty years prior to July 1,

1973.[1] Three of the objectors who testified at the Water Master's hearing in 1993 (whose ages were 83, 71, and 49) stated that the Ohio Ditch had not been used to divert any water from Three Mile Creek during their lifetimes. Graveley's expert witness, Dr. McCleran, testified that in his opinion the Ohio Ditch had not been used to divert water since the early part of this century. Graveley himself, who was 71 at the time of the hearing, testified that there had never been a call for the disputed water right during his lifetime.

In *79 Ranch,* we held that a period of forty years of continuous nonuse of an irrigation right was sufficient to raise a presumption of abandonment. *79 Ranch,* 666 P.2d at 218. In *In re Clark Fork River,* we held that a period of twenty-three years of continuous nonuse of municipal water rights was sufficient to raise a presumption of abandonment. *In re Clark Fork River,* 833 P.2d at 1123. In this case, the uncontroverted evidence establishes that Graveley's water right claim, appropriated and decreed for mining purposes, was not used for a period of over fifty years prior to 1973. Based on the standards established by this Court, it is clear that this showing of fifty years of continuous nonuse raised a rebuttable presumption that Graveley intended to abandon his water right.

---

[1] We note that the purpose of the statewide adjudication of water rights is to determine water rights as they existed on July 1, 1973, when the Montana Water Use Act was enacted. Therefore, evidence of the use of a right after July 1, 1973, is not relevant to the determination of abandonment of an existing water right. *See In re Clark Fork River,* 833 P.2d at 1123-24.

7

The burden of proof therefore shifted to Graveley to rebut the presumption of abandonment by explaining the reasons for nonuse of the water right. At the Water Master's hearing, however, Graveley offered no excuse for the nonuse of his mining water right claim except for the apparent lack of economic viability of mining the area. Graveley did not present evidence that either he or his predecessors had made any effort to make use of the disputed water right for over fifty years prior to July 1, 1973. In fact, Graveley admitted that he had done nothing to use the water right himself and had made no effort to make the Ohio Ditch functional for exercise of that right.

Instead, Graveley maintained that the cyclical nature of the mining industry and its uncertain economics were reason enough to explain the long period of nonuse. Graveley testified that he was aware of the underlying land's potential for mineral development when he purchased the patented mining claim and was awaiting a turn of events in the mining industry to realize the value of both his water right and the underlying mineral interest. Graveley's expert witness, Dr. McCleran, testified that Graveley's mineral rights, like other rights in Powell County, were merely "awaiting renewed interest." Dr. McCleran testified that the mining industry is subject to fluctuations in the national and international economies, the price of commodities such as gold, developments in mining technology, and the regulatory climate in the national, state, and local levels.

On appeal, both Graveley and the Montana Mining Association, which filed an *amicus curiae* brief, contend that the uniqueness of the mining industry compels a different standard for the determination of the abandonment of a water right. In its brief, the Montana Mining Association maintains that "[t]he rule of abandonment as applied to water rights used for mining purposes must recognize that periods of nonuse are common for mineral properties and rarely indicate an intent to abandon the appurtenant water rights." In effect, Graveley and the Montana Mining Association ask this Court to differentiate between the different uses of water in determining the factual question of whether a water right has been abandoned.

We see no reason, however, to make such a differentiation. The law of abandonment has not developed by distinguishing the various uses of water. The statutory guidelines for the determination of abandonment of a water right set forth in § 85-2-404, MCA, characterize all water rights as "appropriation rights," and make no distinction between the uses of water. Although § 85-2-404, MCA, will not become effective for existing rights until they have been finally adjudicated, we cited the statute in our decision in *79 Ranch,* 666 P.2d at 219, as the "general, modern trend," and recognized the importance of "providing an approach for the determination of abandonment of water rights consistent with the express intent of our legislature." The Montana Legislature has clearly not chosen to accord a different standard for the

determination of the abandonment of water rights used for mining purposes.

In addition, Montana's case law has never discriminated between the different uses of water in determining whether a water right has been abandoned. *See, e.g., Smith v. Hope Mining Co.* (1896), 18 Mont. 432, 45 P. 632 (water rights for mining); *Holstrom Land Co. v. Meagher County Newlan Creek Water District* (1979), 185 Mont. 409, 605 P.2d 1060 (water rights for irrigation); *79 Ranch,* 666 P.2d 215 (water rights for irrigation); In *re Clark Fork River,* 833 P.2d 1120 (municipal water rights). In fact, in *79 Ranch,* in response to a claim that a water right claimant's predecessor had not had sufficient funds to irrigate with the water from the claim, this Court relied on a Colorado mining water rights case, *CF & I Steel Corporation v. Purgatoire River Water Conservation District* (Colo. 1973), 515 P.2d 456, in which the Colorado Supreme Court held that the economic realities of the mining industry were not enough to justify fifty-four years of nonuse of a water right. Without making a differentiation between mining and irrigation water rights, we stated:

> Here, [the claimant] argues that his predecessors in interest did not have sufficient funds to irrigate. . . . In response to this same argument, the Colorado Court has stated:
>
> > " Considering the large demands for all of the appropriable water in this state . . ., it might be said that nearly every abandoned water right could have its non-use justified by the economics that might prevail sometime in the future for the use of this water . . . . This gleam-in-the-eye philosophy is not consistent with the protection and

10

preservation of existing water rights." *CF & I Steel Corporation,* 515 P.2d at 458.

(Emphasis added).

Graveley's claim that his mining rights might someday become economically viable reflects nothing more than this "gleam-in-the-eye philosophy" of hope, which we specifically rejected in both 79 *Ranch* and In *re Clark Fork River.* At the Water Master's hearing, Graveley established no fact or condition which would excuse the fifty-year period of nonuse. In addition, he produced no evidence that he had intended to put the water right to beneficial use. Graveley's only rationale for the nonuse of his water right was the lack of profitability of mining his patented mining claims. His only evidence of intent was a hope that that claim might someday become economically viable. However, as the Colorado Supreme Court stated in *CF & I Steel Corp.,* 515 P.2d at 459: "In viewing the issue of abandonment, one must look to the water right as decreed and not to some possible hoped-for future use at some undetermined place."

Therefore, because we reject the argument that mining water right uses should receive unique treatment for the purposes of the factual determination of abandonment, and because we find that Graveley did not introduce evidence sufficient to rebut the presumption of abandonment in this case, we conclude that the Water Court's finding that Graveley abandoned his claim to the disputed water right is supported by substantial evidence. Accordingly, we affirm the order of the Water Court which terminated Graveley's water right claim and ordered that the water right shall not appear

11

in the preliminary decree for the Clark Fork River above the Blackfoot River Basin.

_____
                    Justice

We concur:

_____
        Chief Justice

_____

_____

_____
        Justices

12