No. 04-286

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 100

PETITIONERS I-549,

        Petitioners and Respondents,

    v.

MISSOULA IRRIGATION DISTRICT,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and for the County of Missoula, Cause No. DV 97-8751-550
                The Honorable Edward P. McLean, John S. Henson, John W. Larson,
                and Douglas G. Harkin, Judges presiding.

COUNSEL OF RECORD:

        For Appellant:

        Richard R. Buley, Tipp & Buley, Missoula, Montana

        For Respondents:

        Susan A. Firth, Deputy City Attorney, Missoula, Montana (Missoula
        Housing Authority); Charles M. Hegman, Janice M. Hegman, *pro se*,
        Missoula, Montana; Lon J. Dale, Milodragovich Dale Steinbrenner &
        Binney, Missoula, Montana (Lon J. Dale & Pamela J. Dale); W. Carl
        Mendenhall, Worden & Thane, Missoula, Montana (Curt & Deborah Aasved;
        Edward C. and Carol M. Knudson); James E. Aiken, Jardine Stephensen
        Blewett & Weaver, Great Falls, Montana (Mary Kathryn Scott); Christian T.
        Nygren, Milodragovich Dale Steinbrenner & Binney, Missoula, Montana
        (Christian and Julia Nygren)

                    Submitted on Briefs:  November 30, 2004

                              Decided:  April 19, 2005

Filed:

_____
                    Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 The Missoula Irrigation District ("MID") appeals from various Notices of Entry of Decrees Granting Exclusion from the MID for numerous petitioners, entered in the Fourth Judicial District Court. We affirm in part and reverse in part.

## ISSUES

¶2 We restate the issues as follows:

¶3 1. Did the District Court deny the MID due process by granting petitions for exclusion from the MID based upon unsupported findings of fact submitted by the Standing Master?

¶4 2. Did the District Court have the authority to order the MID to reimburse back taxes?

¶5 3. Did the District Court abuse its discretion when it refused to allow the MID to amend its response?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 The MID was created in 1922 as a successor to a consolidated irrigation ditch, in order to operate, maintain, and administrate the irrigation district. Although there was a statutory process which predated the MID's creation by which landowners could petition for exclusion from an irrigation district, in 1997 the Montana legislature enacted temporary legislation which made the exclusion requirements less stringent within a certain type of irrigation district. From 1997 until December 31, 1998, approximately 550 parties petitioned for exclusion of their land from the MID, pursuant to § 85-7-1846, MCA (1997). The

2

District Court consolidated the petitions for purposes of determining the issues of law and developing a procedure to dispose of each petition.

¶7 Beginning with *Geil v. Missoula Irrigation Dist.*, 2002 MT 269, 312 Mont. 320, 59 P.3d 398 ("Geil I"), and continuing through *RSG Holdings v. Missoula Irrigation Dist.*, 2004 MT 214, 322 Mont. 369, 96 P.3d 1131 ("RSG"); *Geil v. Missoula Irrigation Dist.*, 2004 MT 217, 322 Mont. 388, 96 P.3d 1127 ("Geil II"); and *Larango v. Missoula Irrigation Dist.*, 2004 MT 369, 324 Mont. 534, 103 P.3d 552 ("Larango"), this Court has considered multiple issues raised by and between the various parties. A detailed factual background was set forth by this Court in *Geil I* and has been elaborated upon as necessary in each subsequent proceeding. We continue to do so here, setting forth such facts as are pertinent to this Opinion in the Discussion below.

## STANDARD OF REVIEW

¶8 We review a district court's findings of fact to determine whether they are clearly erroneous. *Matter of Clark Fork River Drainage Area* (1992), 254 Mont. 11, 14, 833 P.2d 1120, 1122 ("Clark Fork") (citation omitted). A finding is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if our review of the record convinces us that the court made a mistake. *Clark Fork*, 254 Mont. at 14-15, 833 P.2d at 1122 (citation omitted).

¶9 In reviewing a district court's conclusions of law, our standard of review is plenary and this Court must determine whether its interpretation of the law is correct. *RSG*, ¶ 9

3

(citation omitted). We review a district court's denial of a motion to amend the pleadings to determine whether the district court abused its discretion. *RSG*, ¶ 9 (citation omitted).

## DISCUSSION

## ISSUE ONE

¶10 Did the District Court deny the MID due process by granting petitions for exclusion from the MID based upon unsupported findings of fact submitted by the Standing Master?

¶11 Under § 85-7-1802(2), MCA (1997), owners of tracts of land three acres or smaller which are not served by any irrigation district canal, system, facility, or other undertaking may petition to exclude their tracts from an established irrigation district, pursuant to the process set forth in § 85-7-1846, MCA (1997). A person holding title to a tract of land meeting the criteria in § 85-7-1802(2), MCA (1997), may petition the district court for an exclusion. The petition must include, among other things, a statement that the tract's users do not and cannot feasibly obtain water from the irrigation district through existing irrigation works. Section 85-7-1846(1)(e), MCA (1997).

¶12 In its Brief, the MID draws our attention to nineteen petitions which the MID claims were improperly excluded from the MID because the Standing Master made inaccurate or unsupported findings of fact which were in turn upheld by the District Court. Calling our attention to a map entitled "Missoula Irrigation District Petitioners and Access as Surveyed by Missoula City/County Health Department Summer of 1995," which was submitted by the MID and admitted as Exhibit 1 in the proceedings below ("Map"), the MID argues that the Map clearly shows that the properties affected by these particular nineteen petitions all have

4

actual access to MID ditches, and thus fail to qualify for exclusion under § 85-7-1846, MCA (1997).

¶13    The MID points out that 119 of the 549 petitions for exclusion were heard, and argues that the court should not have granted the 430 petitions which were not heard.  Furthermore, it argues that all 549 petitions were granted regardless of whether the petitioners presented any evidence in support of their petitions.  In fact, argues the MID, even when evidence was presented which showed that a petitioner had access to the MID's irrigation works, the Standing Master still granted the petition, in contravention of the applicable statutes.

¶14    Although it appears that the MID would like this Court to reverse and remand the orders granting exclusion on all 549 petitions, the MID has not put forth any grounds for us to do so.  It is undisputed that many petitioners did not appear for a hearing.  However, under § 85-7-1846(5), MCA (1997), it is only if the MID files a valid objection to a particular petition that a hearing need be held in the first place.  Moreover, § 85-7-1846(6), MCA (1997), provides that the court shall grant a petition for exclusion if no objections are filed within fifteen days of the filing of such a petition.  Therefore a perfectly good reason supports granting many of the petitions without hearing.

¶15    Our review of the record indicates that many of the 549 petitions were not disputed by the MID at the hearings level, and were thus never scheduled for hearings.  It is not this Court's obligation to comb the record for each of the 549 petitions to determine which were heard, which were scheduled for a hearing but not heard, and which were never scheduled for a hearing at all.  A district court's decision is presumed to be correct and it is the

5

appellant who bears the burden of establishing that the court erred. *Hawkins v. Harney*, 2003 MT 58, ¶ 35, 314 Mont. 384, ¶ 35, 66 P.3d 305, ¶ 35. The MID, as the appellant, has the burden of establishing error by the trial court in each case it contests. Thus, we will limit our inquiry to those nineteen petitions specifically disputed in the MID's Brief.

¶16 Concerning the nineteen petitions the MID disputes, the MID argues that the Map shows these properties to have access to the MID's irrigation ditches. It maintains the Standing Master erroneously found that these properties did not have access to the MID's works, which caused the District Court to conclude incorrectly that these petitions were eligible for exclusion pursuant to §§ 85-7-1802 and -1846, MCA (1997).

¶17 The Map illustrates the MID's coverage area and designates the MID's ditches and other irrigation works. Additionally, all the parcels of land represented within the 549 petitions are numbered and color-coded on the Map. The Map's key explains the color codes, with various designations including "Access, Using," "Access, Not Using," and "No Access, Not Using." Ten of the nineteen properties specifically disputed in the MID's Brief are designated on the Map--the MID's own Exhibit--as "No Access, Not Using," and an eleventh is designated partially as "No Access, Not Using"and partially as "Not Surveyed." In other words, the MID has placed into evidence a document which illustrates that these properties have "No Access" and are "Not Using" the MID's irrigation ditches. Thus for the MID to claim now that the Standing Master erred by finding that these properties have no access and are not using the MID's irrigation ditches is illogical and unsupported by the MID's own Exhibit. As the MID has not provided any evidence that the District Court erred

6

in upholding the Standing Master's findings and conclusions with respect to these eleven petitions, *Hawkins*, ¶ 35, we therefore affirm the District Court on all but the eight petitions which are discussed below.

¶18    The petitioners behind the eight petitions remaining to be resolved in this Opinion filed the necessary documents and requested exclusion of their properties from the MID in a timely manner, pursuant to §§ 85-7-1802 and -1846, MCA (1997).  Although the MID apparently asserted at the hearing level that several of these petitions were deficient, it has not supplied such petitions for our review.  We turn to the record as it appears before us to determine whether the MID correctly contends that the findings regarding these particular petitions were erroneous.

**Petitions 176, 290, and 369**

¶19    The findings specific to Petitions 176, 290, and 369 were grouped with several other petitions which have not been specifically disputed by the MID on appeal.  Regarding this group of petitions, the Standing Master found that the MID's objection to the exclusion of the properties, filed July 1, 2003--which asserted that each "Petition is deficient in that it offers insufficient proof and documentation that the Petitioners cannot feasibly obtain water from the Irrigation District through existing irrigation works"--did not provide sufficient evidence that these properties are served by the MID's works.  The Standing Master further found that the MID's works do not touch these properties, these properties had private land and/or public roadways between them and the nearest MID works, and these petitioners do not and cannot feasibly obtain water from the MID irrigation works.

7

¶20 The Map illustrates that the property at issue behind Petition 176 has a MID ditch running across it and is designated on the Map as "Access, Using." The Map further reveals that Petition 176 consists of three parcels--two of which are designated as "Access, Using" and one of which is designated "No Access, Not Using." With respect to Petition 290, the Map illustrates that this property also has a MID ditch running across it and is listed on the Map as "Access, Using." The Map also reveals that Petition 290 consists of two parcels--one of which is designated as "Access, Not Using," and one of which is designated as "No Access, Not Using." Finally, the Map illustrates that the property at issue behind Petition 369 has two MID ditches upon the property, and the Map indicates this property has access, but is not currently using, the MID's works.

¶21 The MID maintains that if the Standing Master had compared Petitions 176, 290, and 369 to the Map, it would have been apparent to the Standing Master that the properties affected by these Petitions all have access to the MID's ditches. Although each of those petitioners asserted in their petitions that they did not have access to the MID's works, the MID's evidence--the Map--shows otherwise. None of these petitioners made themselves available for their scheduled hearings.

¶22 A finding of fact will not be reversed absent a showing that it is clearly erroneous. *Clark Fork*, 254 Mont. at 14, 833 P.2d at 1122. A finding is clearly erroneous if it is not supported by substantial evidence. *Clark Fork*, 254 Mont. at 14-15, 833 P.2d at 1122. The MID presented the Map as evidence of its position. With no testimony from petitioners and no evidence in the record to rebut the Map, we determine that there is no substantial evidence

8

to support the exclusion of the parcels within Petitions 176, 290, and 369 from the MID. The District Court therefore erred in upholding the findings as they relate to those three petitions, and we accordingly reverse the decision in regards to the two parcels within Petition 176 designated on the Map as "Access, Using," the parcel within Petition 290 designated on the Map as "Access, Not Using," and the sole parcel represented by Petition 369. The remainder of the group of petitions which was grouped with Petitions 176, 290, and 369 in the Standing Master's findings remain unaffected by this reversal and are hereby affirmed.

**Petition 324**

¶23    Petition 324 was also grouped in the Standing Master's findings with several other petitions which have not been specifically disputed by the MID. In regards to these petitions, the Standing Master found that the MID's objection to the exclusion of the properties, filed July 1, 2003--which stated that the "Petition is deficient in that it offers insufficient proof and documentation that the Petitioners cannot feasibly obtain water from the Irrigation District through existing irrigation works"--did not provide sufficient evidence that the properties are served by the MID's works. Again, the MID presented no evidence other than the Map at the December 8, 2003, hearing in support of its objections. Based upon the Map's designations for the properties in this grouping, the Standing Master found that they were surrounded by private land and public roadways and were not touched by any MID works, and the petitioners had no feasible way to obtain water from the MID's works.

9

¶24 The MID argues that the Standing Master inappropriately issued a blanket finding which included Petition 324, because the Map indicates that the property represented by Petition 324 not only has access to a MID ditch, but is actually using the irrigation water. The property owners behind Petition 324 did not appear at a hearing, although their petition was called for a hearing, and the MID did not put on further evidence about the property represented in Petition 324 aside from the Map.

¶25 On the Map, Petition 324 consists of four parcels of land. Two parcels are designated "Access, Using" and two are designated "No Access, Not Using." With no evidence presented to rebut the Map, we determine that there is no substantial evidence to support the exclusion of that portion of Petition 324 which is designated as "Access, Using" from the MID. The District Court erred in upholding the findings as they relate to this petition and we accordingly reverse the decision in regards to Petition 324 only, and only in regards to the two parcels in Petition 324 which are designated as "Access, Using" on the Map. The remainder of the group of petitions which was grouped with Petition 324 in the Standing Master's findings remain unaffected by this reversal and are hereby affirmed.

**Petition 330**

¶26 Specific to Petition 330, which consists of eight tracts of land owned by the Missoula Housing Authority ("MHA"), the Standing Master found that MHA does not and cannot feasibly obtain water from the MID irrigation works for Tracts 1 through 6 and Tract 8 because the MID's works do not touch these tracts, which are surrounded by city streets and private property, and these tracts are not "served by any district canal, system, facility, or other undertaking" of the MID. The Standing Master further found that the closest MID ditch to Tracts 1 through 6 and Tract 8 is across several parcels of private property and a public street.

¶27 The MID argues that Petition 330 should not have been granted an exclusion, because a MHA representative testified that one of the parcels covered by Petition 330 had a MID ditch running along the "west quarter" of the property. MHA responds that it requested exclusion of eight tracts of land from the MID, and ultimately it was granted exclusion of seven of those tracts, because the Standing Master concluded that one of the eight tracts had feasible access to the MID's irrigation works. Neither the MID nor the record in this case clarifies whether the tract which was not granted exclusion was the particular tract which the MHA witness testified had ditch access. The MID has failed to meet its burden of establishing error. *See Hawkins*, ¶ 35. The record being devoid of any meaningful way in which we could review this particular exclusion, we affirm the District Court regarding the exclusion of seven of the eight tracts of land included in Petition 330.

**Petition 362**

11

¶28    Specific to Petition 362, the Standing Master found that owner Bradley Owens does not and cannot feasibly obtain water from the MID works as reflected on the Map because his property is not "served by any district canal, system, facility, or other undertaking" of the MID, and the MID's works do not touch the property or serve it. The Standing Master further found that Owens had never used the MID's works, and private property separates his property from the closest MID ditch.

¶29    At the hearing, Owens appeared and testified. He said that he had not used the MID's works in the fourteen years that he had owned this property. Owens explained that he was an engineer and opined that from a strict "technical" standpoint, he believed *any* property *could* access the MID's works, although it might not be financially feasible to do so. He further testified that, while the boundary of his property was approximately 25 feet from the center of a MID ditch, the land which he would have to cross was currently private property.

¶30    Owens' testimony and the Map are consistent with the Standing Master's finding that the MID's works do not touch Owens' property. A finding that Owens could not access the MID's works without crossing private land is sufficient to uphold the District Court's conclusion that Petition 362 was properly excluded from the MID. Thus, we affirm the District Court regarding Petition 362.

**Petition 509**

¶31     Specific to Petition 509, the Standing Master found that owner William T. Larsen (d/b/a Larsen Investments) does not and cannot feasibly obtain water from the MID's works as reflected on the Map because his property is not "served by any district canal, system, facility, or other undertaking" of the MID.  The Standing Master further found that the MID's works do not touch Larsen's property or serve it, Larsen has never used the MID's works, and Larsen's property is surrounded by city streets and private property, with the closest MID ditch across several parcels of property and a public street.

¶32     The Map indicates that Petition 509 covers four parcels, two of which are labeled "No Access, Not Using," and two of which are labeled "Access, Not Using."  The MID claims the Standing Master's findings are erroneous and argues that Larsen testified that he had access to an irrigation ditch on at least one of the properties covered by his petition.

¶33     We have reviewed Larsen's testimony.  Larsen conceded that from at least one of the properties covered by Petition 509, he had access to the MID's works, although he was not using the water.  Under § 85-7-1846(1)(e), MCA (1997), a tract's user must state that the user does not and *cannot feasibly obtain* water from the irrigation district through existing irrigation works.  (Emphasis added.)  In Larsen's case, he conceded that he *can* feasibly obtain water on some, but not all, of his tracts.  The Map indicates that two of his parcels are "Access, Not Using," and the remaining parcels covered by Petition 509 do not have access.  Thus, no substantial evidence supports the Standing Master's finding to the contrary.  As the MID's Map indicates that two of Larsen's parcels are "No Access, Not Using," we reverse

13

the District Court's upholding of the Standing Master's findings in regards to Petition 509, only with respect to the two parcels which are designated "Access, Not Using" on the Map. We affirm the exclusion of the two "No Access, Not Using" parcels from the MID.

**Petition 545**

¶34    Specific to Petition 545, the Standing Master found that owners Norman and Mary Taylor do not and cannot feasibly obtain water from the MID irrigation works because the MID's works do not touch the property or serve it, and the property is not "served by any district canal, system, facility, or other undertaking" of the MID. The Standing Master found that the Taylors used the MID's works from 1965 until 1985, but that the Taylors' property is six miles from the Clark Fork source and the Taylors are "one of the last eligible ditch users." Based upon Norman Taylor's testimony, the Standing Master found that, due to waste and debris entering the ditch along its route, the Taylors had continuous problems with their pipes clogging and pumps burning out. The Taylors sought to install a settling pond, a deeper screened pump intake, or a diversionary barrier to reduce the blockages, but MID personnel would not permit it. The Taylors ceased using the ditch water and installed an irrigation system which draws on their well water instead. The Standing Master concluded that because the MID did not provide useable ditch water to the Taylors, their use of the ditch water is not feasible.

¶35    The MID argues that, in spite of Taylors' admission that Taylors had actually used the MID's works from 1965 to 1985, the Standing Master erroneously found that they could not feasibly obtain water from the MID, and that the MID's works did not "touch the

14

property." The MID points out that Taylor further testified, "There is no question that we have access to the water," and "technically, we have access. It's not that problem. It's the question of the quality of the ditch water by the time it reaches us."

¶36 While the Taylors may have a legitimate reason for choosing not to use the MID's works, under § 85-7-1846(1)(e), MCA (1997), the users of a tract must establish *both* that they do not *and* that they *cannot* feasibly obtain water from the irrigation district through existing irrigation works. (Emphasis added.) The Taylors admitted that they can feasibly obtain water from the MID's works. There is no provision under this particular statutory scheme for exclusion based on the quality of the water obtained. The District Court therefore erred when it upheld the Standing Master's findings relating to Petition 545, and we accordingly reverse in regards to this petition.

¶37 In summary, we reverse the District Court on Petitions 369 and 545. We affirm in part and reverse in part on Petitions 176, 290, 324, and 509. We affirm the District Court on Petitions 330 and 362, and all the remaining petitions which were not specifically addressed in this Opinion.

**ISSUE TWO**

¶38    Did the District Court have the authority to order the MID to reimburse back taxes?

¶39    The District Court ordered that back taxes shall be reimbursed to the Petitioners as of the date they filed their petitions. The MID objected, arguing that the District Court lacked the authority to order a refund of taxes, the relief available under the applicable statutes did not include a refund of taxes, the applicable statutes did not establish a protest fund, and none of the petitioners argued that the assessments were unlawful in any manner. Respondents, claiming that district courts have the authority to grant this relief even though such relief was not sought by the petitioners, put forth the same arguments we found unpersuasive in *RSG* and *Geil II* on this issue.

¶40    Our holdings in *Geil II*, ¶ 18, and *RSG*, ¶ 18, apply here to the remaining petitioners. Absent explicit authorization from the legislature, we have concluded that the judiciary has no power to refund taxes paid without protest. Tax refunds are a matter of legislative discretion. Therefore, we conclude that the District Court improperly ordered the MID to refund paid taxes from the excluded tracts of land, and we reverse the District Court on this Issue.

**ISSUE THREE**

¶41    Did the District Court abuse its discretion when it refused to allow the MID to amend its response?

¶42    The MID reiterates the arguments which we found unpersuasive in *Geil II*, ¶¶ 20-22, and *RSG*, ¶¶ 20-22. We remain unpersuaded. For the reasons set forth in these previous

16

Opinions, we conclude the District Court did not abuse its discretion when it denied the MID's motion to amend its response, and we therefore affirm the District Court.

**CONCLUSION**

¶43    For the foregoing reasons, we affirm in part and reverse in part on Issue One, reverse on Issue Two, and affirm on Issue Three.

/S/ PATRICIA O. COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JIM RICE

Justice James C. Nelson concurs and dissents.

¶44 I concur in our Opinion with the exception of our decision as to Petition 545, that of Norman and Mary Taylor. As to our decision on that petition, I dissent.

¶45 As described in ¶ 34 of our Opinion, the Taylors' ability to access and use water from MID's canal was completely frustrated by waste and debris entering the ditch along its route. It was not the Taylors' obligation to clean and maintain the ditch; it was MID's. Even then The Taylors attempted to access and use MID water by installing a settling pond, a deeper screened pump intake, or a diversionary barrier to reduce blockages traveling in MID's ditch. MID would not permit these modifications.

¶46 On the one hand, MID complains that the Taylors would not use MID's ditch, but on the other hand, MID suffered debris and waste to exist in its canal water that prevented the Taylors from using the ditch and then, to add insult to injury, refused to allow the Taylors' offer to mitigate the situation so they could access and use MID's ditch and water. MID cannot have it both ways.

¶47 On these facts, I conclude that the Taylors met their burden under § 85-7-1846(1)(e), MCA (1997). The Taylors do not and could not *feasibly* obtain water from the irrigation district through its existing irrigation works. I would affirm as to Petition 545.

¶48 Therefore, I concur and dissent.

/S/ JAMES C. NELSON