T. C. POWER, ET AL., APPELLANTS *v.* JACOB SWITZER,
RESPONDENT.

[Submitted Oct. 25.  Decided Nov. 7, 1898.]

*Water Rights—Appropriation—Change of Use—Abandonment.*

1.  The diversion of water for domestic purposes in excess of what is required, and allowing such excess to overflow lands without any intention of irrigating, and without any intention of using such excess for any useful purpose, does not constitute an appropriation of the excess.
2.  A lawful appropriation of water for a specified purpose gives the owner the right to change the use of his appropriation so long as it does not injure subsequent appropriators in their acquired rights.
3.  In an action to quiet title to the right to use the waters of a creek, where the decree awarded plaintiff a prior right to a certain amount of the water which it was found he had appropriated, he cannot complain of the indefiniteness of a further provision therein awarding defendant the right to the use of all the remaining waters of the creek to the amount "necessary" to the use of his manufactory.
4.  The evidence examined and held to sustain a finding of an abandonment of a water right.

*Appeal from District Court, Lewis and Clarke County.*

ACTION by T. C. Power and others against Jacob Switzer.
From a judgment for defendant and an order denying a new
trial, plaintiffs appeal.     Modified.

Statement of the case by the justice delivering the opinion.

Action to quiet title to the right of use of the water of Uncle
George's creek, in Deer Lodge county, and to enjoin defend-
ant from diverting said water.

Plaintiffs allege ownership and possession of lots Nos. 41,
42, 38 and 39, in township 10 north, of range 6 west, em-
bracing about 500 acres.   Possession and use for pasture and
growing of hay is alleged to have been in plaintiffs and their
predecessors in interest since 1868, and water is alleged to be
necessary for the proper and successful cultivation of the said
lands.   Plaintiffs aver that in 1868 they and their predeces-
sors diverted and used all of the waters of Uncle Gerge's creek,

and conveyed them and have ever since used them upon said lands for agricultural, domestic and other useful and beneficial purposes, until July 17, 1893, when defendant, without right or title, appropriated and diverted all of the waters of Uncle George's creek.

Defendant admits the ownership and possession of the ground in plaintiffs and their predecessors since 1868, but denies that the lands require water for the cultivation of hay, grain or vegetables; denies that plaintiffs ever raised any crops except hay; denies that plaintiffs ever diverted or used any of the waters of Uncle George's creek to or upon the lands described, or that said lands are susceptible of irrigation from the waters of said creek; denies any wrongful diversion; and denies any necessity of the waters for agricultural or domestic purposes upon the land; and denies the allegations of injury. An abandonment of all right to the use of any of said waters is also set up in the answer.

It is also alleged by defendant that the lands do not need irrigation to be used for any purpose for which the plaintiffs or their predecessors have used them, and that neither plaintiffs nor their predecessors ever used the lands for any useful or beneficial purpose, except the raising of hay without irrigation. Defendant then sets up his ownership of a kaoline placer mining claim, and that ever since March 29, 1892, defendant has owned, occupied and used the same for the mining of clay and manufacture of brick and other articles of commerce; that on or about July 17, 1893, finding water necessary to be used in his said business, and the waters of Uncle George's creek being unappropriated, defendant diverted and used all of the waters of said creek to the land he owned for beneficial purposes, and on August 15, 1895, made an amended appropriation of the whole of the waters of said creek, and ever since has continuously used the whole of the said waters in and about his business. Defendant prays to be adjudged to be the owner of the right to the use of said waters, and for injunction against plaintiffs.

The replication denies abandonment, or that the lands do not

require irrigation for successful cultivation, or that defendant requires the use of said waters, or that he has any right or title to the same.

The court tried the case without a jury. Findings and judgment for defendant. Plaintiffs appeal from an order denying their motion for a new trial and from the judgment.

*Walsh & Newman* and *Carpenter & Carpenter*, for Appellants.

*W. H. Trippet* and *T. J. Walsh*, for Respondent.

HUNT, J.—After the testimony was heard upon the trial of the case, the learned judge of the district court went upon the land described in the statement of facts, and observed its character and the location of the water rights involved in the controversy. Afterwards findings of fact were made substantially as follows: That the lands are arid, near the top of the range of the Rocky mountains; that lots 41 and 42 were originally patented by the predecessors of the plaintiffs as gold placer claims, and were never used by the predecessors of plaintiffs for any other purpose than mining claims as long as they resided upon them; that in 1880 the plaintiffs acquired their interest in said lots 41 and 42; that in 1888 or 1889 the plaintiffs acquired the other lands mentioned in the statement of facts, and have occupied the same since then; that the plaintiff's predecessors never claimed any right or interest in the water rights in controversy, nor used any of said waters for any purpose whatever; that neither the predecessors of plaintiffs prior to the year 1880, nor the plaintiffs, ever used the said lands for any other purpose than for mining claims, except to cut a small amount of wild hay thereon; that said lands, by reason of their arid character and high elevation, are unsuitable for agricultural purposes, except for pasturing and wild hay, and that no amount of water used thereon will render them profitable for agricultural purposes; that no attempt has ever been made to use the lands for agricultural purposes other than for natural pasturage and wild hay; that

during the years 1868 and 1869 the predecessors of plaintiffs appropriated all the waters of Uncle George's creek by means of two ditches taken out within the boundaries of lots 41 and 42, the water from one ditch having been designed to furnish power to run a water wheel to pump a mining shaft used in a coal mine, and the other having been designed to convey water to one of the lots for placer mining purposes; that the first-mentioned ditch was built, and water diverted thereby, in 1869, and the second was begun in 1885, and completed in 1887, for placer mining purposes, but, said placer mining operations not proving profitable, they were abandoned, and the ditch was abandoned, and not used thereafter, and partially filled up, to make way for a brick plant erected by the plaintiffs, at or near the point where the water was used for placer mining operations; that the first mentioned ditch, in passing from its head to the coal shaft or water wheel, passes near a store and boarding houses and barns belonging to plaintiffs, and that the waters flowing in said ditch were not only used by plaintiffs in their coal mining project, but likewise furnished water to them for domestic purposes, but that in 1887 or 1888, when the coal mining operations were abandoned, the use of the water for such operations was also abandoned, although plaintiffs continued to use said waters for domestic purposes only; that from that time the water had been allowed to run to waste on the land below where boarding houses and store were situated, without special reference to any beneficial use, there being no attempt, by artificial means by plaintiffs, to convey the same over and upon any of said lands for purposes of irrigation or any other useful purpose; that none of the waters of Uncle George's creek have been used by the plaintiffs or their predecessors, except as has been mentioned, and except for domestic purposes; that the defendant and his predecessors, since 1867, have owned and occupied a tract of about 100 acres of ground, containing a clay valuable for mining purposes and the manufacture of brick, and that in such manufacture and mining considerable water is necessary; that on or about August 10, 1895, defendant diverted and appro-

priated for use, in connection with his brick plant, about 15 inches of water at a point about one and a half miles above the lands of these plaintiffs, and conveyed the same by a ditch to his brick plant for use therein; that, at the time of such diversion by defendant, plaintiffs had no use for any of said waters except for domestic purposes, and that defendant has been using the said water ever since; that Uncle George's creek during the dry season furnishes about twenty inches of water; that a constant flow of one inch is required by defendant for use in his brickyard; and that plaintiffs require for domestic purposes and for the use of stock a constant flow of not more than four inches.

The legal conclusions were that the plaintiffs are entitled to four inches of water at the point of use at all seasons of the year, for domestic purposes, prior in time and right to any use whatsoever on the part of the defendant; that the plaintiffs are not entitled to the use of any of the waters of Uncle George's gulch against the defendant for agricultural purposes; that the defendant, with the exception of the amount required by plaintiffs, is entitled to the use of all the waters of Uncle George's creek, or a sufficient amount thereof to give him a constant flow at his brick plant of not less than one inch, this right to be subject to plaintiff's prior right to the use of four inches for domestic purposes; and that plaintiffs and defendant are entitled to a decree and an injunction, one as against the other.

It is proper to notice an apparent inconsistency between two of the findings. In one the court found that the predecssors of plaintiffs never claimed any right or interest in the water right in controversy, nor used any of the waters for any purpose whatsoever, and subsequently also found that the predecessors of plaintiffs made certain appropriations in 1869, and that such rights were afterwards abandoned. In overruling the motion for a new trial, this apparent contradiction is explained by the judge, who says the particular part of the first paragraph above referred to has reference to 200 acres of land owned by the plaintiffs, and described as lots 38 and 39. ''The orignal owners,'' says the judge in his memorandum

order, ''of these 200 acres, designated as lots 38 and 39, never pretended to any claim of any kind to the water in controversy herein.' The proof amply sustains this assumption, and it was the intention of the court to so find and so state. Words of reference, applying to lots 38 and 39, were omitted by oversight of the court or stenographer; but as this is the manifest meaning of the language used, the court does not feel warranted in trying the case a second time on this account.'' With this explanation on the part of the trial judge, the findings become perfectly consistent, and should be construed with relation to the particular lots of ground to which they severally apply. ·

The lands involved are within a mile or so of the western portal of the Mullen Tunnel, through which the Northern Pacific Railroad runs in crossing the summit of the Rocky Mountains, in Montana. At this great elevation and locality the seasons are too cold, and these particular lands too barren, to produce any crop at all except hay. These facts appear very clearly. It is also in evidence that the predecessors of the plaintiffs originally took out a water right in 1869 to be used for running a water wheel for a coal mine. The water thus used was afterwards diverted so as to flow by plaintiffs' store. Then, in 1885, these plaintiffs filed a claim of water right, and diverted water to a placer claim belonging to them, and known as the ''Mullen Pass Placer Claim,'' and used the waters so diverted for placer-mining purposes. But, defendant's witnesses testify, the plaintiffs' mining operations ceased about 1888, and with their cessation all use of the waters was abandoned, except for domestic purposes about the store, boarding house, and stable. It is in evidence, though, that, after the water flows by the store and boarding house as described, it is allowed to run on down and upon a flat belonging to these plaintiffs, and being part of the lands· described in their complaint. It there distributes itself, in its natural flow, over some four or five acres of ground, there being no artificial irrigation of this overflowed ground by means of any ditches at all. Plaintiffs contend that by this overflow and

distribution of water there were a number of acres of the land irrigated, and thus rendered more valuable for the purposes of raising hay, and that they acquired rights of use for agricultural purposes by this diffusion of water.

The question of abandonment of the use of any of the waters was one of fact, dependent upon the evidence of the conduct, acts, and intent of the parties claiming the usufruct of the water. Plaintiffs admit they never intended to use the water for mining, and under the evidence, it has been found they never intended to use it for agriculture. Their necessities were evidently merely for its use for domestic purposes, and any use of what was not consumed in those ways was a mere incident, brought about by the natural waste of water after it passed the point where it was utilized for domestic purposes, and was not the result of an attempt to cover the lands so as to make them more productive of hay or other crops. But the mere diversion of a quantity of water from a stream is not a legal appropriation of it. It has been a mistaken idea in the minds of many, not familiar with the controlling principles applicable to the use of water in arid sections, that he who has diverted, or "claimed" and filed a claim of, water for any number of given inches, has thereby acquired a valid right, good as against all subsequent persons. But, as the settlement of the country has advanced, the great value of the use of water has become more and more apparent. Legislation and judicial exposition have, accordingly, proceeded with increasing caution to restrict appropriations to spheres of usefulness and beneficial purposes. As a result, the law, crystallized in statutory form, is that an appropriation of a right to the use of running water flowing in the creeks must be for some useful or beneficial purpose, and when the appropriator, or his successor in interest, abandons and ceases to use the water for such purpose, the right ceases. (Sections 1880, 1881, Civil Code.) A man may divert more water than is necessary for domestic and culinary purposes, and permit the excess to flow on down to his lands; but if he has no intention of using such excess to irrigate the land upon which the excess so runs, and his purpose is not to raise a crop or run ma-

chinery, or to mine, or to otherwise apply it to a useful purpose, he acquires no valid right to such excess by the mere fact of a diffusion of waste water upon the grounds, even though they be susceptible of cultivation. The intention of the claimant is therefore a most important factor in determining the validity of an appropriation of water. When that is ascertained, limitation of the quantity of water necessary to effectuate his intent can be applied according to the acts, diligence, and needs of the appropriator. In this case the lower court has applied these established principles, and its findings, except as hereinafter stated, and conclusions, being justified by substantial evidence, must be sustained.

The decree adjudges plaintiffs to be entitled to the use of four inches of water, prior in right to any use whatsoever on the part of the defendant, "for domestic purposes only," and that plaintiffs are not entitled to the use of any water, as against the defendant, for agricultural purposes. It then awards defendant the right to use all the waters of the creek " to the amount necessary to the use of his brick manufactory, *  *  *  subject only to the plaintiffs' prior right to the use of the four inches for the purposes aforesaid." Plaintiffs object to the restriction confining the use of water to "domestic purposes only." Now, under the law, if plaintiffs desire to change the use of their appropriation of four inches, they may do so, provided, always, they do not deprive subsequent appropriators of any rights acquired. They ought not, therefore, to be confined to the use of the water for domestic purposes only, but should be simply adjudged the owners of a right to the use of four inches of water prior to defendant's rights. It is true the court found that no amount of water could render the lands involved valuable for cultivation, but even if that were true, plaintiffs might desire to use their appropriation for other beneficial uses, and ought not to be prevented from so doing. The decree should, therefore, be modified by striking out the words which circumscribe plaintiffs' right of use. The finding of the court that no amount of water used on the lands of plaintiffs will render them profitable for agricultural purposes is not material to a decision of the case. We

believe, however, that the evidence does not sustain such a finding, inasmuch as it appears that hay has been and can be successfully raised upon the ground, if irrigated. The evidence upon this point was relevant, as bearing upon the question of the intent of plaintiffs; but whether or not the land may be made profitable for agricultural purposes is not directly involved in the suit, and no finding in respect to it was required.

Some contention is made that four inches is an insufficient quantity for the domestic uses of plaintiffs. This argument can hardly be seriously considered, when the great quantity of water represented by a steady flow of four statutory inches is estimated. It means about 2,800 gallons per hour.

Appellants also object to the part of the decree awarding respondent a right to the use of all the waters of the creek to the amount necessary to the use of his brick manufactory, subject to plaintiffs' prior right to the four inches aforesaid, and enjoining the plaintiffs from interfering with respondent's rights. The objection seems to be that the decree is indefinite. There is no error in this, however, which prejudices plaintiffs' rights, inasmuch as defendant is only given what water is necessary for his manufacturing business. Plaintiffs have got all they are entitled to under the evidence; so of what concern is it to them that defendant's use is not specifically limited by any number of inches? If defendant uses more than is necessary, the excess is subject to legal appropriation by plaintiffs or any one else; but, so long as plaintiffs have their rights adjudicated, they are not in a position to complain of the decree. Any rights which they may subsequently acquire are not affected in any way, for they are not litigated by this action.

The cause is remanded to the lower court, with directions to strike out the findings held to be immaterial, and to modify the decree in accordance with the views herein expressed. When so revised and modified, the order and judgment appealed from will be affirmed; each party to pay his own costs.

*Modified and Affirmed.*

PIGOTT, J., concurs. PEMBERTON, C. J., not sitting.