No. 97-600

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 230

C. LONEY CONCRETE CONSTRUCTION,

INC., (CLAY LONEY),

Appellant and Appellant,

v.

EMPLOYMENT RELATIONS DIVISION,

UNINSURED EMPLOYERS' FUND,

Respondent and Respondent.

APPEAL FROM: Workers' Compensation Court,,

The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Antonia P. Marra, Bell & Marra, Great Falls, Montana

For Respondent:

Daniel B. McGregor, Attorney at Law, Department of

Labor and Industry, Helena, Montana

Submitted on Briefs: August 6, 1998

Decided: September 15, 1998

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

**¶ Respondent, the Uninsured Employers' Fund (UEF), a division of the Department of Labor and Industry (DOL), issued a cease and desist order to appellant, C. Loney Concrete Construction, Inc. (Loney), for failure to pay workers' compensation insurance premiums on workers Loney utilized through a temporary service contractor. The Workers' Compensation Court upheld the cease and desist order on the grounds that some of the workers were not temporary workers, but rather baseline workers contracted to work for an indefinite period of time. Loney appeals from this decision. We affirm.**

**¶ Loney raises the following issues on appeal:**

**¶ 1. Did the Workers' Compensation Court err in its interpretation of § 39-71-116 (24), MCA (1991) (renumbered and redefined as § 39-71-116(34), MCA (1995))?**

**¶ 2. Did the Workers' Compensation Court err when it determined that the hearing examiner's findings of fact were supported by substantial evidence?**

FACTUAL BACKGROUND

**¶ C. Loney Concrete Construction, Inc., is a locally-owned concrete construction business, involved in both wall construction and flat work. The business is legally**

organized as a close corporation with Clay Loney and his wife as sole shareholders.

¶ Clay Loney began this business in 1983, incorporated it in 1988, and by 1992 employed twenty-six workers both full- and part-time. Loney's number of workers, as well as their rates of pay, have fluctuated over the years, however. For example, between 1991 and 1992, Loney's number of workers dropped from thirty-three to twenty-six. Depending on the time of the year and the types of concrete sub-contract jobs available, fluctuations like this are characteristic of the concrete industry in Montana.

¶ In response to the fluctuations, Loney entered into an agreement with Olsten Staffing Services, a temporary service contractor, in June 1992. Through this agreement, Olsten supplied Loney with a list of available workers from which it could choose individuals for particular jobs and determine their hourly wages. Loney's former employees were interviewed and hired by Olsten, and were added to the pool of available workers. This allowed Loney to continue to use its former employees, some of whom were experienced concrete finishers and job supervisors.

¶ Prior to the 1992 agreement with Loney, Olsten had provided Loney with a part-time bookkeeper. This bookkeeper provided services to Loney and other employers through the Olsten agency. However, once her services were established with Loney, Loney stopped calling Olsten every time it needed bookkeeping assistance. Loney's 1992 agreement with Olsten for concrete workers did not affect the bookkeeper's services, except that she was no longer responsible for Loney's payroll since all of Loney's employees were provided through the Olsten agency.

¶ The financial arrangement between Loney and Olsten is noteworthy. While Loney paid Olsten enough to cover wages, overhead costs, and presumably a profit, Olsten paid Loney's workers and provided for their workers' compensation coverage.

¶ In August 1992, shortly after Loney entered the agreement with Olsten, Loney received a letter from the UEF stating that the business was "force canceled" for failure to maintain workers' compensation insurance on its workers. As follow up to the letter, a field representative for the UEF spoke with both Loney and Olsten, and determined that the workers that Loney utilized were not in fact temporary workers. Therefore, Loney, and not Olsten, was the employer responsible for their workers' compensation benefits and the payment of the premiums.

¶ On September 15, 1992, the UEF issued Loney an order to cease and desist its operations. Loney challenged the order before a DOL hearing examiner, who issued a finding in the UEF's favor on April 13, 1993. Loney appealed to the Workers' Compensation Court, and on December 28, 1993, the court reversed and remanded, stating that the burden of persuasion was incorrectly placed on Loney to prove that its workers were temporary. Before Loney presented its case a second time to the DOL, Loney filed a complaint in the District Court of the Eighth Judicial District, Cascade County, alleging that the DOL did not have proper jurisdiction to determine the status of Loney's workers. The District Court, however, dismissed Loney's complaint on June 12, 1995, and concluded that the DOL had jurisdiction and that Loney had not exhausted all its administrative remedies. On September 28, 1995, a hearing examiner heard Loney's case for a second time. Again, the examiner determined that none of Loney's workers were temporary workers. Thereafter, Loney appealed to the Workers' Compensation Court, and on August 15, 1997, the Workers' Compensation Court issued an order which upheld the hearing examiner's finding that certain workers were not in fact temporary workers, but reversed the finding as to the remaining workers, again on the basis that the burden of persuasion was incorrectly allocated to Loney. Loney appeals that part of the Workers' Compensation Court's decision holding that certain workers were not temporary workers.

## DISCUSSION

¶ The starting point of our discussion focuses on two provisions of the Montana Workers' Compensation Act. Section 39-71-507(1), MCA, provides that "[w]hen the department discovers an uninsured employer, it shall order the employer to cease operations until the employer has elected to be bound by a compensation plan." Also, § 39-71-117(2), MCA, provides that "[a] temporary service contractor is the employer of a temporary worker for premium and loss experience purposes." Thus, if Loney's workers were not temporary workers, Olsten was not their employer and the UEF correctly ordered Loney to cease operations.

¶ The Workers' Compensation Court concluded that the hearing examiner's determination that nine of Loney's workers, including Clay Loney and his two sons, were not temporary workers was supported by substantial evidence. Instead, they were baseline or core workers, who worked for Loney on an indefinite basis even though they were employed through a temporary service contractor. In Loney's first

appeal, the Workers' Compensation Court noted that a temporary worker, as defined in § 39-71-116(24), MCA (1991), is one who is employed "to meet an emergency or short-term workload." The Workers' Compensation Court defined an emergency workload as one which meets an "unforeseen and unexpected" need, and a short-term workload as one that "is greater than the normal workload and exists for a matter of weeks or at most a few months." In its second appeal, Loney contended that the meaning of short-term should be expanded in light of the 1995 Montana Legislature's modifications to the definition of temporary worker in § 39-71-116(34), MCA (1995) (formerly § 39-71-116(24), MCA (1991)). The court rejected Loney's contention on the grounds of *res judicata*.

## STANDARD OF REVIEW

¶ In this case, the Workers' Compensation Court was required to follow the same standard of review as a trial court when reviewing an agency decision. The standard of review is set forth in the Montana Administrative Procedure Act at § 2-4-704, MCA. Section 2-4-704(2)(a)(v), MCA, provides that the agency's decision may be reversed if substantial rights have been prejudiced because the agency's findings, inferences, conclusions or decisions are clearly erroneous in view of the substantial evidence of record. *See State Compensation Mut. Ins. Fund v. Lee Rost Logging* (1992), 252 Mont. 97, 102, 827 P.2d 85, 88. We apply the same standard of review as did the Workers' Compensation Court. *Synek v. State Compensation Mut. Ins. Fund* (1995), 272 Mont. 246, 250, 900 P.2d 884, 886. In so doing, we must review the hearing examiner's findings of fact to determine that they are supported by substantial evidence and not clearly erroneous, and determine whether the Workers' Compensation Court made the correct conclusions of law. *See Baldridge v. Board of Trustees, Rosebud County School Dist. No. 19* (Mont. 1997), 951 P.2d 1343, 1346, 54 St. Rep. 1495, 1497.

## ISSUE 1

¶ Did the Workers' Compensation Court err in its interpretation of § 39-71-116(24), MCA (1991) (renumbered and redefined as § 39-71-116(34), MCA (1995))?

¶ We must first decide whether the Workers' Compensation Court was correct when it did not apply the 1995 Montana Legislature's modification to the definition of temporary worker. Section 39-71-116(24), MCA (1991), which was in effect when

**Loney received the cease and desist order, defines temporary worker as a "worker whose services are furnished to another on a part-time or temporary basis to substitute for a permanent employee on leave or to meet an emergency or short-term workload." The Workers' Compensation Court concluded that since Loney no longer had permanent employees pursuant to its agreement with Olsten, the critical question then becomes whether Loney was using the workers to fill an emergency or short-term need.**

**¶ Loney urges that the Workers' Compensation Court erred by not interpreting the meaning of "short-term" to include a seasonal workload. He argues that the 1995 amendments to the statute are a clear reflection of the legislative intent which should have been considered by the Workers' Compensation Court. Whereas the 1991 definition of temporary worker does not refer to seasonal workloads, the 1995 definition states that a temporary worker is**

a worker whose services are furnished to another on a part-time or temporary basis to fill a work assignment with a finite ending date to support or supplement a workforce in situations resulting from employee absences, skill shortages, <u>seasonal workloads</u>, and special assignments and projects.

Section 39-71-116(34), MCA (1995) (emphasis added). This modification to the definition of temporary worker became effective October 1, 1995, shortly after Loney's second hearing with the DOL. In essence, Loney argues that the Workers' Compensation Court should have incorporated the 1995 amendments into its statutory analysis. Loney really urges for a retroactive application of the 1995 amendments.

**¶ In workers' compensation matters, we have consistently stated that the statutory law in existence at the time the action accrues is controlling. *See, e.g., Buckman v. Montana Deaconess Hospital* (1986), 224 Mont. 318, 321, 730 P.2d 380, 382. Furthermore, we have said that an inappropriate retroactive application of the law "takes away or impairs vested rights acquired under existing laws or creates a new**

obligation, imposes a new duty, or attaches a new disability in respect to transactions already passed." *Porter v. Galarneau* (1996), 275 Mont. 174, 183, 911 P.2d 1143, 1148-49; *see also Wallace v. Montana Dept. of Fish, Wildlife and Parks* (1995), 269 Mont. 364, 367-68, 889 P.2d 817, 819-20. In summary, we do not apply law retroactively if it will cause a different legal effect on a transaction than that under the law when the transaction occurred. *See Porter*, 275 Mont. at 183, 911 P.2d at 1149 (citing *St. Vincent Hospital v. Blue Cross* (1993), 261 Mont. 56, 862 P.2d 6).

¶ In *Porter*, we considered whether the Montana Legislature's 1995 modification to the Scaffold Act should be applied retroactively in a case which involved an employer's liability for an employee's deadly fall from a ladder. At the time the case was decided by the district court, we held that a ladder was considered a scaffold. *See Porter*, 275 Mont. at 180, 911 P.2d at 1147. The 1995 modification, however, specifically excluded a ladder from the coverage of the Act. *See Porter*, 275 Mont. at 182, 911 P.2d at 1148. On appeal, we held that the ladder should be considered a scaffold despite the 1995 modification since a retroactive application of the modification would have caused a different legal effect from that which the accident had under the law when it occurred. *See Porter*, 275 Mont. at 183, 911 P.2d at 1149.

¶ For the same reasons, we will not retroactively apply the Montana Legislature's 1995 modification to the definition of temporary worker. Originally, the Workers' Compensation Court limited temporary workers to a workload of, at most, a few months. Arguably, retroactive consideration by the Workers' Compensation Court of the 1995 legislative amendment could certainly result in a different interpretation of the statute. Thus, the 1995 modification would cause a different legal effect from that which Loney had under the 1991 statute.

¶ Because we conclude that the 1995 amendment to the definition of temporary worker would be an inappropriate retroactive application of the law, we decline to address the issue of *res judicata* as it was raised in this case. We hold that the Workers' Compensation Court correctly interpreted § 39-71-116(24), MCA (1991), without reference to the 1995 amendments.

## ISSUE 2

¶ Did the Workers' Compensation Court err when it determined that the hearing examiner's findings of fact were supported by substantial evidence?

¶ **Next, we address the question of whether the Workers' Compensation Court correctly concluded that there is substantial evidence to support the hearing examiner's findings that Loney's core workers were not temporary. To come within the 1991 definition of temporary worker, Loney's core workers would have to be deployed to meet either an emergency or a short-term need. The evidence shows, however, that Loney utilized its core workers consistently to serve daily business functions, such as job supervision, bookkeeping, and providing a minimum number of concrete workers to meet its baseline level of job activity. Clearly, Loney did not utilize its core workers to meet emergency needs. Whereas an emergency is characterized by an immediate need that is unforeseen, Loney retained its core workers on a continual basis and utilized them to meet regular and predictable requirements. The evidence also shows that Loney did not use its core workers to meet short-term demands. The Workers' Compensation Court appropriately distinguished core workers, who serve an employer's baseline needs, from temporary workers, who are used only short-term. The facts show that Loney's core workers served Loney's baseline needs before its agreement with Olsten and continued to do so after the agreement, working consistently and in some instances exclusively for Loney. The continuity and consistency of services that Loney's core workers provided and the manner in which they were used, clearly take them out of the statutory definition of temporary worker under § 39-71-116(24), MCA (1991).**

¶ **We therefore hold that the Workers' Compensation Court committed no error when it determined that the hearing examiner's findings of fact were supported by substantial evidence.**

¶ **We affirm the judgment of the Workers' Compensation Court.**

/S/ JIM REGNIER

We Concur:

No

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER