DA 13-0238

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 342

BULL LAKE FIRE DISTRICT, a Political Subdivision,

      Petitioner and Appellant,

  v.

LINCOLN COUNTY, a Political Subdivision, ROBY BOWE,
in his capacity as Lincoln County Sheriff and Director of the
Libby PSAP, TROY AREA DISPATCH BOARD, LIBBY
VOLUNTEER FIRE DEPARTMENT, a Municipal Fire
Department of the City of Libby, LIBBY VOLUNTEER
AMBULANCE SERVICE, INC., a Montana Public Benefit
Corporation, and TROY VOLUNTEER AMBULANCE,
a Montana Public Benefit Corporation,

      Respondents and Appellees.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
                   In and For the County of Lincoln, Cause No. DV-11-292
                   Honorable C.B. McNeil, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Kim T. Christopherson, Christopherson Law Office, P.C.,
           Kalispell, Montana

      For Appellees:

           Sean Goicoechea; Jinnifer J. Mariman, Moore, Cockrell, Goicoechea
           & Axelberg, P.C., Kalispell, Montana

      For Amicus Curiae Angel Island Community Association:

           Douglas C. Allen, Attorney at Law, Cut Bank, Montana

For Amicus Curiae Montana State Fire Chiefs Association, Montana Volunteer Fire Fighters Association, Gallatin County Fire Council, and Missoula Rural Fire District:

Catherine Dinwiddie, Attorney at Law, Bozeman, Montana

Courtney Jo Lawellin, Attorney at Law, Livingston, Montana

Submitted on Briefs:  October 16, 2013
Decided:  November 12, 2013

Filed:

_____
Clerk

2

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      The Bull Lake Fire District appeals from the District Court's "Order Granting Respondents' Motion for Summary Judgment Re:  BLFD," filed March 5, 2013.  We reverse.[1]

¶2      The controlling issue on appeal is whether the District Court properly granted summary judgment to Lincoln County and the other respondents, collectively referred to as the County Respondents.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3      In 1989 the Lincoln County Commissioners created the Bull Lake Rural Fire District as provided for in §§ 7-33-2001 and 7-33-2101 through -2144, MCA.  Those statutes provide that upon petition of property owners and after notice and hearing, a county commission may create a fire district.  Sections 7-33-2101 through -2103, MCA.  The county commission may contract directly with another public entity to provide fire protection, or it may choose to appoint trustees to govern and manage the district.  Section 7-33-2104, MCA.  When the Lincoln County Commission established the Bull Lake Fire District it chose to appoint a board of trustees to govern and manage it.  The District encompasses identified parcels of private property located along an eleven-mile stretch of State Highway 56 in Lincoln County.

---

[1] The Cabinet View Fire Service Area was originally a petitioner in the action along with the District.  However, during the pendency of this action the County dissolved the Fire Service Area.  It did not participate in this appeal and this Court has removed its name from the caption.

¶4 In 2011 the District's Trustees amended the Bull Lake Fire District By-Laws to reflect the scope of services that a district can offer under Montana law. Section 7-33-2105, MCA, provides that a district's trustees "have the authority to provide adequate and standard firefighting and emergency response apparatus, equipment, personnel, housing, and facilities, including real property and emergency medical services and equipment for the protection of the district." Section 7-33-2105(1)(b), MCA. Bull Lake's revised By-Laws provide that it intends to respond to "all non-medical emergencies within the district" including "fire prevention and suppression, motor vehicle accidents, extrication, hazardous material incidents, [and] water rescue/marine fire incidents."

¶5 A dispute arose between the District and the County Respondents over whether the District could offer any services other than "adequate and standard" firefighting. The County contends that the scope of the District's services was established when the District was created in 1989. The County contends that despite changes in Montana law regarding the scope of services that a district may provide, Bull Lake cannot extend its services beyond structure, wildland and vehicle firefighting without the County's prior approval.

¶6 The District and the County Respondents also have a dispute concerning dispatching the District to respond to emergencies. The Lincoln County Commission oversees emergency services dispatching in the County. It contracts with the Troy Area Dispatch Board to dispatch emergency services in the Troy area, which includes the Bull Lake Fire District. Troy Dispatch dispatches the District to respond to structure and

4

wildland fires that arise in the District's territory, but does not dispatch the District to other emergencies. The District contends that it has the right to be dispatched to all emergencies in its geographical area, and it self-dispatches to emergencies that it learns of by using a radio scanner. This has resulted in conflicts with other public entities in the area.

¶7    The District brought a declaratory judgment action seeking resolution of the dispute with the County Respondents as to the permissible scope of the District's services, and as to the circumstances under which the District could be dispatched. After a hearing and briefing, the District Court granted summary judgment to the County Respondents. The District Court found no statute that determines who can expand the scope of services provided by a district, but also concluded that no statute grants that power to a district itself. The District Court concluded that the scope of the District's services was delegated by the County at the time the District was created in 1989 and is limited by the language of § 7-33-2105, MCA, as it existed at that time. The District Court further determined that the Legislature's 1991 amendment of the statute to include "emergency response" and "emergency medical services" was not retroactive. Therefore the statutory change did not expand the scope of the District's services, which were limited those "delegated" by the County in 1989.

¶8    The District Court held that the District is only entitled to notification, as provided in § 10-4-104(2), MCA, of emergencies that occur within its geographical jurisdiction and within the authorized scope of its services. The District Court further concluded that Troy Dispatch has the discretion to dispatch the emergency services that it deems

necessary and appropriate for each situation, as provided in § 10-4-101(7) and (23), MCA, and is not required to dispatch the District to all calls.

¶9 In summary, the District Court determined that the District is wholly a creation of Lincoln County; that the County delegated to the District only the authority to provide limited firefighting services; and that only the County can authorize the District to expand the scope of its services. Last, the District Court concluded that the District is only entitled to receive notice of emergencies in its geographical area and that Troy Dispatch has the discretion whether to dispatch the District to respond to any particular emergency.

## STANDARD OF REVIEW

¶10 This Court reviews a district court's ruling on summary judgment de novo, to determine whether it is correct, applying the same standards as the district court under M. R. Civ. P. 56. *Lucas v. Stevenson*, 2013 MT 15, ¶ 12, 368 Mont. 269, 294 P.3d 377.

## DISCUSSION

¶11 The creation and operation of fire districts are governed by §§ 7-33-2001 and 7-33-2101 through -2144, MCA. The first issue is whether those statutes limit the District to providing only standard structure, wildland and vehicle firefighting services.

¶12 Contrary to the District Court's conclusions, the statutes are clear that when a district is governed by a board of trustees, as is the case with the Bull Lake Fire District, the trustees and the fire chief determine the scope of the district's services under Montana law. The role of a court in construing a statute "is simply to ascertain and declare what is in terms or in substance contained therein." Section 1-2-101, MCA; *Friends of the Wild*

6

*Swan v. DNRC*, 2005 MT 351, ¶ 13, 330 Mont. 186, 127 P.3d 394. When the intent of the Legislature can be determined from the plain meaning of the words used, courts need not go further to apply other means of construction. *State v. Daniels*, 2003 MT 30, ¶ 9, 314 Mont. 208, 64 P.3d 1045.

¶13 Section 7-33-2105(1)(b), MCA, as it has existed for over twenty years, provides that fire district trustees "*have the authority* to provide adequate and standard firefighting and emergency response apparatus, equipment, personnel, housing, and facilities, including real property and emergency medical services and equipment, for the protection of the district." (Emphasis added.) Similarly, a district is overseen by a fire chief who is responsible for "providing and managing emergency services that are *established by the agency*." Section 7-33-2001(1)(e), MCA (emphasis added). Those services "include but are not limited to" fire suppression, medical aid, hazardous materials response, ambulance service and extrication from vehicles. Section 7-33-2001(1)(e)(i)-(v), MCA. The fire chief is responsible for establishing and maintaining a training program for the district, which "*must* include training in all areas of emergency response in which the agency provides services." Section 7-33-2001(11), MCA (emphasis added).

¶14 These powers and duties as to the scope of services are specifically granted to a fire district's trustees and fire chief, and are governed by Montana law. *City of Cut Bank v. Glacier County*, 270 Mont. 355, 358, 891 P.2d 1174, 1176 (1995). As the District Court recognized, Montana law contains no requirement that a district seek prior approval of the county before it can provide any of the emergency services provided for in Montana law.

¶15 Fire districts are governed by Montana law and the Legislature may amend that law from time to time, as it did in the case of § 7-33-2105, MCA. Therefore, when the Legislature amended the statute subsequent to the establishment of the District, the amended statute applied and authorized the District to provide the services described in §§ 7-33-2001 and -2105, MCA.

¶16 This is not an issue governed by the rules on retroactive application of statutes, § 1-2-109, MCA. The amendment of § 7-33-2105, MCA, to include "emergency services" and "emergency medical services" did not result in a retroactive application of law. The amendment simply allowed existing districts and those created in the future to provide expanded services if they chose to do so. Impermissible retroactive application of a statute occurs when it is applied to divest or impair vested rights acquired under prior law, or when it creates a new obligation, imposes a new duty or attaches a new disability in respect to transactions already passed. *C. Loney Concrete v. Uninsured Employers' Fund*, 1998 MT 230, ¶ 18, 291 Mont. 41, 964 P.2d 777. There has been no showing that the amendment at issue here, empowering the trustees of a district to provide emergency services, divested or impaired any vested right or adversely impacted any transaction already passed. Section 7-33-2105, MCA, had always specified the "powers and duties of trustees," and the amendment simply expanded the powers and duties of trustees of a district going forward. *See* § 1-2-203, MCA (amendments to statutes are considered to be enacted at the time of amendment).

¶17 While fire districts have these and other independent powers,[2] they are not wholly dissociated from the counties in which they exist. The county commission appoints the initial trustees and fills trustee vacancies when they arise. Section 7-33-2106, MCA. The district prepares an annual budget and may request the county commission to levy a tax upon property within the district to provide funds to operate the district. Sections 7-33-2105 and -2109, MCA. Any money received by the trustees must be deposited with the county treasurer, to the credit of the district. Section 7-33-2105, MCA. Under certain circumstances the county commission may dissolve a district. Section 7-33-2128, MCA.

¶18 For purposes of the present case, the divisions of responsibility as between the County and the District are well-defined, and the District has the power to provide the services set out in § 7-33-2105, MCA.

¶19 The District Court correctly framed the dispatch issue as one primarily relating to the District's scope of services, noting that the County Respondents "do not dispute that BLFD is and will be dispatched to all fires and situations where there is an immediate threat of a fire occurring within BLFD's jurisdiction." The District Court concluded that the District "must only be notified of emergency calls within BLFD's geographical jurisdiction and within its scope of authorized services." Finally, the District Court held that Troy Dispatch "has the discretion to dispatch emergency services, including those provided by BLFD, as it deems appropriate."

---

[2] Fire district trustees may enter contracts with other entities for fire protection services (§ 7-33-2107, MCA); may enter mutual aid agreements with other entities (§ 7-33-2108, MCA); and may pledge income to secure financing for district operations and borrow money by issuing bonds (§ 7-33-2109, MCA).

9

¶20 Emergency service calls to 9-1-1 are governed by statute in Montana, Title 10, chapter 4, MCA. A basic 9-1-1 system includes equipment necessary to receive calls on a twenty-four-hour basis at a public safety answering point (PSAP). Section 10-4-101(4) and (22), MCA. A PSAP, like Troy Dispatch, must have the capability to dispatch public and private services in the 9-1-1 jurisdiction. Section 10-4-103(2)(b), MCA. This can be done in three ways. The PSAP may "as appropriate" directly dispatch public or private safety services to the incident. Section 10-4-101(22), MCA. The PSAP may receive the pertinent information from the 9-1-1 call and "relay" that information "to the appropriate public safety agency . . . for dispatch of an emergency unit." Section 10-4-101(23), MCA. The PSAP may directly "transfer" the 9-1-1 call "to an appropriate public safety agency or other provider of emergency services." Section 10-4-101(25), MCA.

¶21 Section 10-4-104(2), MCA, provides that a "public safety agency with jurisdictional responsibilities must in all cases be notified by the public safety answering point of a request for service in the agency's jurisdiction." Clearly Montana law places a duty on the PSAP provider to notify (whether through direct dispatch, relay or transfer) all emergency service providers within the jurisdictional area of a particular call. Section 10-4-101(7), MCA, defines "direct dispatch" as the service that the PSAP "provides for a decision as to the proper action to be taken and for dispatch of appropriate emergency service units." Section 10-4-101(22), MCA, provides that a PSAP may "as appropriate" directly dispatch, transfer or relay calls. Both provisions confer discretionary authority on the PASP, depending upon the response required by the circumstances of each situation.

¶22 The responsibility of a court, when there are several statutory provisions, is to apply them if possible to give effect to all. Section 1-2-101, MCA; *State v. Incashola*, 1998 MT 184, ¶ 16, 289 Mont. 399, 961 P.2d 745. Therefore, while a public service agency "with jurisdictional responsibilities" must "in all cases" be notified by the PSAP of a request for service in the agency's jurisdictional area, it is the responsibility of the PSAP to determine how to provide the notification, and which emergency service provider to actually dispatch in each instance.

¶23 The District Court's award of summary judgment to the County Respondents is reversed.

/S/ MIKE McGRATH

We concur:

/S/ BRIAN MORRIS
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ JIM RICE

11