JUSTICE RICE,
dissenting.
¶47 In brief fashion, the Court dispenses with Skinner’s retroactivity argument by reasoning, as the Water Court did, that § 85-2-227(4), MCA, “merely changed the burden of proof as to the municipal abandonment inquiry,” and is therefore the same kind of change deemed to be “procedural” in Royston, which the Court reasons “is directly on point.” Opinion, ¶¶ 18, 20. The Court’s analysis indicates that the changes brought about by the statute are not significant and thus concludes that the statute is not retroactive. Opinion, ¶¶ 17-20. However, a proper analysis demonstrates clearly that the statute has changed the law substantively and decisively, far beyond the burden-of-proof issue deemed to be a procedural change in Royston, and has impacted established prior rights in a manner that renders it an impermissible retroactive provision under § 1-2-109, MCA, and our case law. Any possible doubt about that proposition is resolved by the Court’s declaration that the statute adopts, for the first time in the history of Montana water law, the Growing Communities Doctrine.
¶48 The question of whether a statute is retroactive appears initially to be a simple inquiry, but the appearance is deceptive, and can lead to an inadequately analyzed decision. Determining whether a law creates a procedural or substantive impact upon established rights requires an understanding of the nature and operation of those rights, which, under Montana water law, draws into the discussion our precedent addressing constitutional principles governing water rights. About that, a clarifying word is necessary at the start. I agree with the Court that we are not here presented with a constitutional challenge to § 85-2-227(4), MCA. Skinner did not give notice of a challenge and insists he has not brought one. Consequently, I do not address or reach *18 any conclusions about the constitutionality of the statute. However, reference to constitutional precedent herein is necessary to explain the legal nature of water rights for purposes of determining whether the statute has impacted those rights substantively, and is therefore retroactive in effect.
¶49 As decreed in the same litigation that decreed the water rights now held by the City, Skinner holds undivided interests in four water rights totaling 10.02 CFS, dating from March 31, 1865 to April 30, 1870, in Ten Mile Creek downstream from the City’s diversions. Whitcomb v. Helena Water Works , No. 4989, Mont. 1st Jud. Dist. Ct. (Mar. 28, 1903).[1] Skinner’s water rights, like the City’s, are decreed and vested rights that existed upon ratification of the 1972 Constitution, which provided: “All existing rights to the use of any waters for any useful or beneficial purpose are hereby recognized and confirmed.” Mont. Const, art. IX, § 3(1). This constitutional provision is “self-executing,” Gen. Agric. Corp. v. Moore, 166 Mont. 510, 515, 534 P.2d 859, 862 (1975), and “prevents the State from affecting rights vested at the time the Constitution was adopted other than through the exercise of Constitutionally provided powers such as eminent domain, Mont. Const. Art. II, sec. 17, or the general police power, and without affording due process of law, Mont. Const. Art. I, sec. 17.” In re Powder River Drainage Area, 216 Mont. 361, 375-76, 702 P.2d 948, 957 (1985).
¶50 Importantly, there are “two components to the Montana Constitutional guaranty: there must be an existing right to the use of water, and the use must be for a beneficial purpose.” McDonald v. State, 220 Mont. 519, 525, 722 P.2d 598, 601 (1986) (emphasis added). As the Court explained:
Montana has always protected, by law and the decisions of this Court prior to 1972, and by the Montana Constitution since 1972, any beneficial irrigation right within the original appropriation of water. It is quite apparent from all the pre-1973 water cases in Montana that the courts look to beneficial use as the essential criterion in determining suits between water claimants.
McDonald, 220 Mont. at 525, 722 P.2d at 602. (Emphasis added.) Made clear from the entirety of our precedent, including cases applying the *19 1972 Constitution, is that protected water rights consist of those rights existing prior to 1973 for which the water was put to a beneficial use. E.g., Murray v. Tingley, 20 Mont. 260, 268-69, 50 P. 723, 725 (1897); Mettler v. Ames Realty Co., 61 Mont. 152, 159-60, 201 P. 702, 703-04 (1921); Kelly v. Teton Prairie LLC, 2016 MT 179, ¶ 11, 384 Mont. 174, 376 P.3d 143 (“[A] water right could be acquired by taking possession of water on the public domain and putting it to beneficial use.”). The beneficial use requirement is a cornerstone, pre-1973 legal concept that the law continues to enforce, now by statute. A pre-1973 water right is a “right to the use of water that would be protected under the law as it existed prior to July 1, 1973.” Section 85-2-102(12), MCA. (Emphasis added.)
¶51 Further, a water right is a property right. Brennan v. Jones, 101 Mont. 550, 567, 55 P.2d 697, 702 (1936) (“[I]tis settled by the decisions of this court that such a right is property which may be disposed of apart from the land on which it has been used.”). Both the amount of water and the priority for its use are substantive parts of that property right:
Property rights in water consist not alone in the amount of the appropriation[,] but, also, in the priority of the appropriation. It often happens that the chief value of an appropriation consists in its priority over appropriations in the same natural stream. Hence, to deprive a person of his priority is to deprive him of a most valuable property right.
Gen. Agric. Corp., 166 Mont. at 517, 534 P.2d at 863 (quoting Whitmore v. Murray City, 107 Utah 445, 453, 154 P.2d 748, 751 (1944)); accord § 85-2-401(1), MCA (“As between appropriators, the first in time is the first in right.”); Kelly, ¶ 11.
¶52 Because a water right is founded on application of the water for a beneficial use, a water right holder may lose the water right through abandonment. In re Musselshell River Drainage Area, 255 Mont. 43, 47, 840 P.2d 577, 579 (1992) (“Water rights are thus inherently different from other rights or interests not fundamentally premised or conditioned on use of the particular right or interest; necessarily, then, abandonment of a water right is a question distinct from abandonment of a right created in a different manner.” (emphasis in original)). About this characteristic of water rights, we have held that “when the appropriator, or his successor in interest, abandons and ceases to use the water for such [a beneficial] purpose, the right ceases.” Power v. Switzer, 21 Mont. 523, 529, 55 P. 32, 35 (1898). We have held that a water right may be lost in its entirety by abandonment, In re *20 Adjudication of Water Rights of Clark Fork River, 254 Mont. 11, 15-17, 833 P.2d 1120, 1123-24 (1992) [hereinafter Deer Lodge} (finding the City of Deer Lodge had abandoned two water rights in entirety), or that it may be partially lost by partial abandonment, where the water right holder had ceased using the entire right. Power, 21 Mont, at 530, 55 P. at 35 (holding plaintiff only retained four inches of water for domestic purposes out of their larger prior water right used for mining and domestic purposes); Holmstrom Land Co. v. Meagher Cnty. Newlan Creek Water Dist., 185 Mont. 409, 423-24, 605 P.2d 1060, 1068-69 (1979) (finding abandonment of all but 80 miners inches of the original 337 miners inches in the water right through nonuse).
¶53 “Two elements are necessary for the abandonment of a water right: nonuse of the water associated with the water right and intent to abandon the water right.” Deer Lodge, 254 Mont. at 15, 833 P.2d at 1123 (citing Shammel v. Vogl, 144 Mont. 354, 359, 396 P.2d 103 (1964)). We have held that nonuse, in and of itself, is sufficient evidence to prove an intent to abandon. 79 Ranch, 204 Mont. at 432, 666 P.2d at 218 (“[T]he evidence clearly shows at least forty years of continuous nonuse of the water rights ... such a long period of nonuse is strong evidence of an intent to abandon the water rights.” (emphasis added)); Smith v. Hope Mining Co., 18 Mont. 432, 438, 45 P. 632, 634 (1896) (“The nonuser [sic] of water for so long a period [9 years], and especially a period longer than the statute of limitations, is certainly very potent evidence, if it stood alone, of an intention to abandon.” (emphasis added)); Holmstrom Land Co., 185 Mont. at 424, 605 P.2d at 1069 (“Seventy-five years of nonuse is sufficient to provide ‘clear evidence’ of abandonment.”); Deer Lodge, 254 Mont. at 16, 833 P.2d at 1123 (finding “twenty-three plus” years of nonuse by the city of Deer Lodge was abandonment). “[S]uch a long period of continuous nonuse [40 years] raises the rebuttable presumption of an intention to abandon, and shifts the burden of proof onto the nonuser to explain the reasons for nonuse. This conclusion is highly consistent with the fundamental policy that a water right does not mean possession of a quantity of water, but its beneficial use.” 79 Ranch, 204 Mont. at 432-33, 666 P.2d at 218 (emphasis added). Thus, in addition to holding that nonuse can be sufficient, even if “it stood alone,” to prove abandonment, we have explained that the concept of abandonment is linked to the defining element of a water right, beneficial use. The law of abandonment is an inherent part of the law of beneficial use.
¶54 With this understanding of the nature of water rights, I turn to § 85-2-227(4), MCA, and the dispositive question of whether it is *21 retroactive. The statute is not expressly retroactive, but “I i Impermissible retroactive application of a statute occurs when it is applied to divest or impair vested rights acquired under prior law, or when it creates a new obligation, imposes a new duty or attaches a new disability in respect to transactions already passed.” Bull Lake Fire Dist. v. Lincoln Cnty., 2013 MT 342, ¶ 16, 372 Mont. 469, 313 P.3d 174 (emphasis added) (citing C. Loney Concrete Constr., Inc. v. Emp’t Rels. Div., Uninsured Emp’rs’ Fund, 1998 MT 230, ¶ 18, 291 Mont. 41, 964 P.2d 777). Laws that “produce a different legal result” are retroactive and, as such, inapplicable to claims rising prior to the statute’s enactment. Porter v. Galarneau, 275 Mont. 174, 185, 911 P.2d 1143, 1150 (1996) (emphasis added); accord Thayer v. Hicks, 243 Mont. 138, 157, 793 P.2d 784, 796 (1990). In contrast, merely “procedural” changes are not retroactive. Saint Vincent Hosp. & Health Ctr. v. Blue Cross & Blue Shield of Mont., 261 Mont. 56, 61, 862 P.2d 6, 9 (1993).
¶55 Section 85-2-227(4), MCA, creates a new presumption of non-abandonment for a city (or a privately owned utility serving a city) when it “has used any part of the water right... and there is admissible evidence” the city or other entity took one of several other nonuse actions, such as conducting a formal study of the municipal water system. Section 85-2-227(4)(c), MCA (emphasis added). The Court concludes that this statute is not retroactive because it has the same effect as the statute in Royston, which we held was procedural, not substantive. In Royston, the Roystons challenged the Water Use Act’s provision that shifted the burden of proof regarding a change of appropriation from the objector (to prove adverse impact) to the applicant (to prove no adverse impact). Royston, 249 Mont. at 427-29, 816 P.2d at 1056-57. They argued that “because their water rights are existing water rights recognized by the 1972 Montana Constitution, construing the statute as changing the burden of proof and placing it on the applicant is an impermissible retroactive application of a statute because it impairs vested rights acquired pursuant to the 1972 Montana Constitution.” Royston, 249 Mont. at 428-29, 816 P.2d at 1057. We rejected that argument, holding that “[a] water right recognized by the 1972 Constitution does not include the right to not have to carry a burden of proof. This Court has held that the application of statutory procedures to water rights vested under the 1972 Montana Constitution is not unconstitutional.” Royston, 249 Mont. at 429, 816 P.2d at 1057. We thus concluded that the burden change was not a retroactive law because “I s Itatutes that modify the procedure for exercising a vested right or carrying out a duty do not *22 constitute retroactive 1 egisiation.” Royston, 249 Mont. at 429, 816 P.2d at 1058.
¶56 Royston involved purely a shift of the burden of proof in a water case. Neither the substance of the law nor the kind or quantum of evidence necessary to prevail was altered by the statute at issue in Royston. Although the burden of proof was shifted between the parties, the substantive issue remained the same: whether there had been an adverse impact. Here, much more is at issue. Beyond merely shifting a burden of proof by granting a presumption in favor of the city under certain circumstances, § 85-2-227(4), MCA, also alters the substantive law of abandonment and the evidence necessary to prevail on the issue of abandonment, when a city is a party. The substantive law has been changed.
¶57 Setting aside the mere change in the presumption and the burden of proof from one party to another—held permissible as a procedural change in Royston—§ 85-2-227(4), MCA, alters the substantive law of abandonment by permitting a municipality to acquire its favorable presumption even though it has used only part of its water right. As explained above, the common law had long held that partial use of a water right could trigger partial abandonment of the right—regardless of other actions taken by the water right holder supportive of the right. Power, 21 Mont. at 528-31, 55 P. at 34-35 (noting evidence that plaintiff had allowed excess water diverted, through no intentional means, to naturally flow through dryland hay and thus increased the crop, showed no actual intent to use it beneficially, thus the plaintiff only retained the part of the water right put to beneficial use, the domestic uses); Holmstrom Land Co., 185 Mont. at 424, 605 P.2d at 1069 (holding only 80 miners inches of an originally 337 miners inch water right was retained because, for seventy-five years, the irrigated land could only accommodate and put to beneficial use 80 miners inches); Deer Lodge, 254 Mont. at 16, 833 P.2d at 1123 (“Deer Lodge’s evidence that it carried the water rights as assets on its books is not sufficient to rebut the presumption of abandonment [established by 23 years of nonuse].”). This was, as noted above, because the common law of abandonment is inextricably linked to the key principle of beneficial use—all of the water must be beneficially used. Power, 21 Mont. at 529, 55 P. at 35 (“[W]hen the appropriator, or his successor in interest, abandons and ceases to use the water for such [a beneficial] purpose, the right ceases.”); McDonald, 220 Mont. at 525, 722 P.2d at 601 (“There are two components to the Montana Constitutional guaranty: there must be an existing right to the use of water, and the use must *23 be for a beneficial purpose.”). Section 85-2-227(4), MCA, alters these cornerstone beneficial use principles in the substantive law, replacing them with a hybrid principle that requires only partial use of the water, in combination with a non-water use action, to create the presumption and to preserve the water right.
¶58 One of these non-water use actions listed in § 85-2-227(4)(b), MCA, is the construction of a “diversion or conveyance” structure. Thus, as the Water Court held and the Court affirms, the construction of a structure of sufficient size to merely accommodate the City’s full water rights is sufficient to obtain the presumption (along with partial use of water), without actually using the full water right. Likewise, this is a change in the substantive law of abandonment and beneficial use.
¶59 This is incredibly significant to Skinner. Beyond the mere shifting of the burden of proof to him, the substantive law, and the evidence permitted thereunder, that Skinner formerly could have used to rebut the City’s presumption and prove abandonment has now been altered dramatically, in the City’s favor. Specifically, as we have repeatedly held throughout our entire history of water law, cited in the cases above, evidence of nonuse of water by a water right holder was “potent,” “strong,” or “clear” evidence of intent to abandon. Now, under § 85-2-227(4), MCA, this same evidence will no longer be sufficient to prove an intent to abandon. As the City’s briefing explains, and the Court holds, once a municipality satisfies the statute and the new presumption arises, “the burden of showing abandonment [is] on the challenger, regardless of period of non-use.” (Emphasis added.) Consequently, under the statute, what we have repeatedly held to be the most critical evidence in a common law abandonment case—nonuse of the water—has, as a matter of law, been stripped of its evidentiary significance, thus essentially creating a conclusive, not rebuttable, presumption in the City’s favor.
¶60 Such a conclusive presumption was clearly applied in the Water Court’s decision that the Court today affirms. After first holding that the City had obtained the presumption under § 85-2-227(4), MCA, the Water Court ruled that Skinner’s evidence of many years of nonuse simply did not apply because, as it explained, “the whole purpose of Section 85-2-227(4), MCA[,] is to presume nonabandonment in precisely those circumstances when intent to abandon would otherwise be presumed (e.g. based on a long period of nonuse).” It could not be any clearer that the very evidence this Court has held, for more than a century, was the best evidence of an intention to abandon a water right is simply no longer effective in cases involving municipalities. The Water Court used the statute to disallow Skinner’s strongest *24 evidence—the fact the City could not put to beneficial use large chunks of its water rights for significant periods of time. Indeed, the Water Court reached the incredible conclusion that Skinner had presented “no evidence that Helena intended to abandon 7.35 cfs of its water rights during the period from 1919 to 1948.” (Emphasis added.) Evidence that we have declared for over a century as “potent,” “strong,” and “clear” proof of abandonment under the common law has now been deemed to be “no evidence” whatsoever, as a matter of law. This is illustrated in the extreme by the Court’s reversal of the Water Court’s holding that the City abandoned the .6 CFS that it did not use for some 60 years. Skinner could not even prevail on his abandonment claim by showing six decades of nonuse!
¶61 These changes, which the Court explains is the codification of the Growing Communities Doctrine, go far beyond simple “procedural” changes. The statute “takes away or impairs vested rights acquired under existing laws or creates a new obligation, imposes a new duty, attaches a new disability in respect to transactions already passed, or gives a transaction a different legal effect from that which it had when it occurred.” Porter, 275 Mont. at 185, 911 P.2d at 1150 (citation omitted). It will “produce a different legal result.” Porter, 275 Mont. at 185, 911 P.2d at 1150. Property rights are protected by the Montana Constitution as a fundamental right. Mont. Const. art. II, § 3. Section 85-2-227(4), MCA, has dramatically eroded the pre-1973 common law under which Skinner’s water rights were established, and also eroded the standing of his water rights against a municipality. His common law right to claim the use of water as a junior water user, upon proving abandonment of some water by a senior water user, has now been effectively impaired. This impacts his priority status, which we have declared to be a property right. All of the changes to Skinner’s rights, discussed above, combine to cause a “substantive” impact.
¶62 I am not objecting to the Legislature’s right to change the common law—it is entitled to change the common law when it wishes, and it has clearly done so. Nor am I saying that the statute violates the Constitution’s protection of pre-1973 rights. That issue is not before us in this case. Further, I well understand the need to ensure that communities are able to protect sufficient supplies of water as they grow. However, that goal should not be obtained at the expense of the law, properly applied. Section 85-2-227(4), MCA, has clearly effectuated substantive changes in the law that have greatly impacted Skinner, and others who are situated similarly. Skinner’s rights have been significantly devalued from the status they held under the common law. The statute effectuating these changes should not be *25 whitewashed with a can of procedural Kalsomine. The changes rendered are clearly substantive, making the statute impermissibly retroactive.
¶63 I would reverse the Water Court’s decision and remand for further proceedings for application of the common law principles of abandonment and beneficial use.
JUSTICE MCKINNON and JUSTICE BAKER join in the dissenting Opinion of JUSTICE RICE.

 Skinner, along with Carol A. Skinner, owns a undivided 21/440 interest in: Claim 41190189-00 (1.88 CFS, decreed date of April 30, 1870); Claim 41190190-00 (4.38 CFS, decreed date ofMarch31,1865); Clai m41I90191-00 (1.88 CFS, decreed date of April 30, 1883); and Claim 41I 90192-00 (1.88 CFS, decreed date of May 31, 1865).